UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LOUISE TRAUMA CENTER LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-CV-3517 (RC) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY TO DOJ OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Louise Trauma Center, now replies to the Opposition of DOJ [ECF # 16] to Plaintiff's Motion for Summary Judgment ]ECF #14].

Dated: August 3, 2021

Respectfully Submitted,

*s/ David L. Cleveland*
David L. Cleveland
Attorney for Plaintiff
DC Bar # 424209
1220 L Street NW #100
Washington, DC 20005
[202] 812-8684   <1949.david@gmail.com>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LOUISE TRAUMA CENTER LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-cv 3517 (RC) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES

**TABLE OF CONTENTS**                         Page

Table of Cases and Other Authorities………………………………………..….…….…..…3

INTRODUCTION……………………………………………………………………………4

ARGUMENT

I-A. The Department of Justice Improperly Lumps Together Documents and Three Privileges.................................................................................................................................5

I-B. The Department of Justice is Wrongfully Relying upon the Work-Product Doctrine...............................................................................................................................10

I-C. The Department of Justice Has Not Shown that Disclosure Will Result in Foreseeable Harm to an Interest Protected by an Exemption....................................................13

II. The Department of Justice Has Not Conducted a Reasonable Search for Records Concerning Studies and Analyses Done in Response to the FOIA Improvement Act.............16

CONCLUSION………………………………………………………………..….............20

**TABLE OF AUTHORITIES**
**Cases**   Cases marked with * are chiefly relied upon

*ACLU v. US Dept of Homeland Security,*
    2017 WL 9500949, at *10 (C.D. Cal. Nov. 6, 2017) ...............................................11

*ACLU v. U.S. DOJ,* 880 F.3d 473, 487-88 (9th Cir. 2018). ...................................................12

*Advancement Project v. U.S. DHS*,
    2021 WL 3036723 (D.D.C. July 19, 2021) ..........................................................10

*Amadei v. Nielsen,* 2019 WL 8165492 (E.D.N.Y. Apr. 17, 2019) ..........................................12,13

*Brennan Center for Just. at New York Univ. v. US Dept. of Justice,*
    2020 WL 1451503, at *10 (D.D.C. Mar. 25, 2020) ..........................................................8

*Defenders of Wildlife v. U.S. Border Patrol,* 623 F.Supp. 2d 83, 88 (D.D.C. 2009)..............16

*Heggestad v. U.S. Dept. of Justice,* 182 F. Supp. 2d 1 (D.D.C. 2000)....................................8.

*Inhabitants of Montclair Twp. v. Ramsdell,* 107 U.S. 147, 152 (1883)..................................18

*Jaen v. Sessions,* 899 F.3d 182 (2d Cir. 2018)........................................................10

*Judicial Watch v. Dep't of Commerce,* 375 F. Supp. 3d 93, (D.D.C. 2019)…………….…….....5

*Kilmer v. U.S. CBP,* 2021 WL 1946392 (D.D.C. May 14, 2021)..........................................10

*Nat'l Ass'n of Crim. Defense Lawyers v. Dept of Justice EOUSA*
    844 F.3d 246, 256–57 (D.C. Cir. 2016). ...................................................11, 16

*Nat'l Wildlife Fed. v. U.S. Forest Serv.,*861 F.2d 114 (9th Cir. 1988)............................. .........7

*Pavement Coatings Tech. Council v. U.S. Geological Survey,*
    2021 WL 1823300 (D.C. Cir. May 7, 2021)........................................................4,14,15

*Public Emps. for Env't Resp. v Env't Prot. Agency,*
    213 F. Supp. 3d 1 (D.D.C. 2016)............................................................9

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation,*
    2021 WL 2753938 (D.C. Cir. July 2, 2021)....................................................4, 15, 19

*Shapiro v. U.S. Dep't of Justice,* 969 F. Supp. 2d 18 DD.C. 2013) ....................................11

*Stone v. INS,* 514 U.S. 386 (1995)………………………………………………………………18

## INTRODUCTION

Plaintiff seeks a ruling on the Second Cause of Action, and also on the Fourth Cause of Action, as set forth in the Complaint.

### THE SECOND CAUSE OF ACTION: TRAINING MATERIALS FOR LAWYERS

Plaintiff  Louise Trauma Center  requested "all records concerning Office of  Immigration Litigation training materials for lawyers in the appellate section. dated 1-1-19 to the date you begin to process this request." The DOJ stated it had located 4,168 pages and 12 videos, which were withheld "in full"  because they were protected by three privileges: deliberative process, attorney work-product; and attorney-client.

### EXEMPTION FIVE SHALL BE CONSTRUED NARROWLY

The D.C. Circuit recently instructed:

"And it is also clear from our—and Supreme Court—precedent that we are obligated to construe the exemption narrowly and focus on whether disclosure will harm intra-agency candor and efficiency. *Id.* at 1434–35; *see also Milner*, 562 U.S. at 565, 131 S.Ct. 1259 ("[FOIA's] exemptions are explicitly made exclusive, and must be narrowly construed." (internal citations and quotations omitted))"

*Pavement Coatings Tech. Council v. U.S. Geological Survey,* 995 F.3d 1014, 1022-23

 (D.C. Cir. 2021)

The D.C. Circuit requires agencies to be particular and detailed in their claims, and to avoid  generalizations and conclusions. *Reps. Comm. for Freedom of the Press v.  Fed. Bureau of Investigation,* 2021 WL 2753938, at *12 (D.C. Cir. July 2, 2021) (disapproving of an FBI declaration for being "scanty," "wholly generalized and conclusory.")

## I-A. THE DEPARTMENT OF JUSTICE IMPROPERLY LUMPS TOGETHER DOCUMENTS AND THREE PRIVILEGES

The DOJ has withheld 125 documents, and lumps them altogether, claiming that each document is exempt under three separate privileges. This is improper.

*The Kravitz declaration is too vague*

The DOJ submitted a Declaration from Hirsh Kravitz, the Acting Director of the FOIA department inside the Civil Division [ECF # 16-2].  Paragraph 7 states that the Civil Division has "125 documents (consisting of 4,363 pages)."

 Paragraph 11 states that the Civil Division was able to segregate and release a few documents, and that three privileges ["work-product" privilege; "deliberative process" privilege and the "attorney-client" privilege] applied. The last sentence of  his Declaration provides:

> All other training material contains attorney/instructor professional interpretation of statutes and court opinions, and perceived weaknesses or strengths in present and future legal arguments and analysis and could not be reasonably segregated.

The Kravitz declaration does not explain what the "125 documents" are. Who is the author, who is the audience, what is the date, what is the content? We are not told. The last sentence of the declaration, referring to "professional interpretation of statutes..." and "perceived weaknesses or strengths in...arguments," strongly suggests that only the "work product" privilege is being asserted. But, we are not told that. The declaration suggests that all three privileges apply to each of the 125 documents. Is that true? No.

The declaration declares that more information "could not be reasonably segregated." Why not? Is it because parts are "inextricably intertwined" with other parts? We are not told.

*The Vaughn Index is too vague*

ECF # 16-3 is a *Vaughn Index* submitted by the DOJ. Plaintiffs will focus on just one aspect of it, for illustrative purposes. On its first page, at Document Batch 2, October 1-4 and 7, 2019, concerning the 25th Annual Immigration Law Seminar, it says that 2,075 pages were withheld in full [WIF] and that 11 pages were released in part [RIP]. Under "Description," more than 30 topics are set forth. Under "Privilege," it states: *Exemption 5.*  Under that exemption, three privileges are listed: 1] the deliberative process privilege; 2] the attorney work-product privilege; and 3] the attorney-client privilege.

The word "segregate" is not mentioned. The *Index* suggests, but does not expressly claim that all three of the above-stated privileges apply to all of the 2,075 withheld pages.

ECF # 16-3 does not state how many documents are included. We are not told about the author, the audience, the date, and the content of each. We are not told if any of them contain "professional interpretation of statutes..." or if any contain "perceived weaknesses or strengths in...arguments," [subjects mentioned in the Kravitz declaration].  ECF # 16-3 lists many phrases, such as "exhaustion in cases," "monographs on immigration law," and "judicial review of removal orders," but does *not* mention the Kravitz phrases.

Months ago, Plaintiff argued in ECF 14, at 8: "The training given to appellate lawyers is merely continuing legal education. Material that simply lists case law and recites case holdings is not protected by the attorney work-product privilege." The Kravitz declaration and the *Index* do not mention this argument. The declaration and *Index* do not *dis*-agree with this argument.

*The Department of Justice Opposition in vague*

  1. The Deliberative Process Privilege

The Department of Justice filed an Opposition [ECF # 16]. At page 15, the DOJ says the "deliberative process" privilege is involved with agency "decisions."  The DOJ nowhere claims that the 125 documents being withheld are connected to any "decisions." At page 18 of ECF # 16, the DOJ cites *Nat'l Wildlife Fed. v. U.S. Forest Serv.,* 861 F.2d 114 (9th Cir. 1988) for the proposition that reports containing opinions and recommendations aimed at improving the agency's activities were predecisional.  But the DOJ does not claim that any of the 125 withheld documents contain recommendations about improving activities.

  The DOJ has not demonstrated that the deliberative process privilege applies to *any* of the 125 documents. If it really does apply to some of the documents, the DOJ must explain that in detail.

  2. The Attorney Client Privilege

In ECF # 16,  the DOJ does not argue that the attorney-client privilege is involved. It is not in the Table of Contents.  Nonetheless, the DOJ suggests that this privilege applies to each of the 125 withheld documents.  It doesn't. It is unfair of the DOJ to muddle the proceedings in this way.

  Some months ago, Plaintiff stated: "The DOJ modified its position in early May 2021 and disclaimed relying upon the deliberative process privilege and the attorney-client privilege." ECF #14-1, Paragraph 13.  Plaintiff was correct.

### 3.   The Attorney Work Product Privilege

In ECF # 16, the DOJ Opposition, "Attorney Work Product" is discussed at page 16-17 of 30. The DOJ does not mention the 125 withheld documents. Nor is there any mention of the 125 documents at pages 18-19 of 30.

The DOJ cites *Heggestad v. U.S. Dept. of Justice,* 182 F. Supp. 2d 1 (D.D.C. 2000) three times in its Opposition. But that case involved a request for recommendations made concerning the prosecution of a real case, concerning the Reverend Moon. It did not deal with attorney training.

*The above inconsistent and vague statements are unfair to Plaintiff*

The above inconsistent disclosures are unfair to the FOIA requester.  It is wrong for an agency to simply lump together hundreds of records, and declare that three different exemptions apply to each of them. The *Vaughn* Index is designed to serve three important functions: "[I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." *Brennan Center for Just. at New York Univ. v. US Dept. of Justice,* 2020 WL 1451503, at *10 (D.D.C. Mar. 25, 2020) (citing *Judicial Watch,* 449 F.3d at 146, quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987).

In the instant case, the DOJ did not carefully analyze the 125 documents; the trial court can't fulfill its duty, and the adversary system is not operating.

The agency must "review the requested records one by one and assign each to a category." *Brennan Center,* at *11. In that case, the fourth category of documents had over

20,000 pages. The Court criticized the agency declaration because "It does not specify which of the 20,217 pages contain recommendations or deliberative material..." Id., at *12. The agency declaration claimed work-product was involved. "While this may be true with respect to some of the over 20,000 pages, the declaration does not tie this description to any specific documents or categories of documents – it just states that it applies to the "information withheld." Id at *12.

A Vaughn Index must identify each document by page number and a detailed description. In *Defenders of Wildlife v. U.S. Border Patrol,* 623 F.Supp. 2d 83, 88 (D.D.C. 2009) the Court found the agency's Index to be insufficient, even though it was "lengthy, identifying each document by page number and providing three categories of information: a brief description of the document, the exemption(s) cited, and the content of the withheld portion and the basis for its withholding."

The Court rejected the Index, because it "systematically fails to identify relevant information such as the originating component agency, the author, and frequently the recipient(s) of the document. As the court of appeals recently has explained, details such as these are necessary 'to enable the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions.' *Judicial Watch, Inc. v. FDA,* 449 F.3d at 150." *Defenders of Wildlife, at* 88.

The Index in the instant case has far fewer details than the one in *Defenders.*

Under Exemption 5, "an agency must provide in its declaration and *Vaughn* index precisely tailored explanations for each withheld record at issue. *Nat'l Sec. Counselors v. CIA*, 960 F.Supp.2d 101, 188 (D.D.C. 2013)." Pub. Emps. for Env't Resp. v. Env't Prot. Agency, 213 F. Supp. 3d 1, 11–12 (D.D.C. 2016). A *Vaughn Index* must identify each document, with page numbers, and a detailed description. Even then, it could be deemed insufficient. For example, in

*Advancement Project v. U.S. DHS,* 2021 WL 3036723, at *7 (D.D.C. July 19, 2021) the agency

provided a page number and this description of an email: it discussed "interviews that will and

are taking place for Cambodians and citizens of other countries in order to obtain travel

documentation and repatriate these individuals." The Court found this to be inadequate. *Accord:*

*Kilmer v. U.S. Customs and Border Protection,* 2021 WL 1946 392, at *15 (D.D.C. May 14,

( 2021). (Providing "only broad categorical explanations" is insufficient.")

## I-B. THE DEPARTMENT OF JUSTICE IS WRONGFULLY RELYING UPON THE WORK-PRODUCT DOCTRINE

The Department of Justice has not shown that the 125 withheld documents are protected

by the work-product doctrine.

*Continuing legal education is not protected by the attorney work product privilege*

Plaintiff argued in ECF 14, at 8: "The training given to appellate lawyers is merely continuing

legal education. Material that simply lists case law and recites case holdings is not protected by

the attorney work-product privilege." The DOJ is silent in response.

FOIA is premised on accountability, not blind trust. *Ipse dixit* is insufficient. The Court

should not just immediately defer to the DOJ. Governmental training of its employees about

"what the law is" should be well within the grasp of FOIA. Improper or inadequate training of

law enforcement officials can have a grave impact on the public. There may be errors in the

training. For example, in *Jaen v. Sessions,* 899 F.3d 182, note 4 (2d Cir. 2018), a USCIS Policy

Manual was found to have incorrectly stated the law.

Disclosure of "what the law is" will aid the public. It will help persons comply with the

law. Lawyers will be more able to advise their clients.

The providing of "case summaries" and "mere training" are not protected by the

work product doctrine. <u>Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for United States Att'ys</u>, 844 F.3d 246, 256–57 (D.C. Cir. 2016). To be sure, if the materials have an "adversarial function," the doctrine does apply. *Id.* at 255.

"Policy manuals" generally are not work product. *Id.* at 255. But long documents usually have segregable sections. "In cases involving voluminous or lengthy work-product records—the Blue Book is more than 500 pages in length—we think it generally preferable for courts to make at least a preliminary assessment of the feasibility of segregation." *Id.*

For example, <u>Am. C.L. Union of San Diego & Imperial Ctys. v. United States Dep't of Homeland Sec.</u>, 2017 WL 9500949, at *10 (C.D. Cal. Nov. 6, 2017) involved the Enforcement Law Course at the Border Patrol Academy. Chapters 16 and 17 were properly withheld as attorney work product, but Chapters 1-15 and 18-20, which contained a "synthesis of case law," were not.

In the instant case, over 2,000 pages are involved. The agency must provide details of those pages, so the Court and plaintiff can assess the feasibility of segregation.

For another example, see  <u>Shapiro v. U.S. Dep't of Just.,</u> 969 F. Supp. 2d 18, 32 (D.D.C. 2013), which involved a Brief Bank maintained by the DOJ. The Court ruled that parts of the Brief Bank were not protected:

-"Neutral summaries of the legal holdings of cases and the issues they present in stand-alone documents, untethered to any particular claim in litigation, do not qualify for work product protection, even when the documents discuss legal issues arising in agency litigation," [*Id.* at 36];

-"EOUSA seeks to withhold nearly 4,000 documents under this privilege, but fails to provide any information regarding the dates of creation or the authors or recipients of any of the documents." *Id.* at 333

Criminal Division documents "missing the kind of document-by-document information regarding the dates of creation, the authors and recipients, and some more detailed description of the documents' contents" are not protected. *Id.* at 333.

*The Ninth Circuit is in accord*

"[R]outine DOJ communications to its many staff attorneys concerning new legal developments—essentially, continuing legal education messages" are not protected. *ACLU v. U.S. DOJ*, 880 F.3d 473, 487-88 (9th Cir. 2018). "Material that simply lists relevant case law and recites case holdings is not protected by the attorney work-product privilege or Exemption 5. These sections provide objective descriptions of cases and so more closely resemble continuing legal education resources for DOJ attorneys than attorney work product. Unless a given portion of the document here at issue contains some original analysis—particularized arguments, strategies, or tactics generated in anticipation of litigation, even if not for a particular claim—it cannot claim the protection of Exemption 5." *Id.*

*The Southern District of New York is in accord*

Amadei v. Nielsen, 2019 WL 8165492, at *8 (E.D.N.Y. Apr. 17, 2019) involved the discovery of training materials used by U.S. Customs and Border Protection. The Court ruled the materials were not protected by the attorney-client privilege, nor by the work-product privilege. Citing from a case in California, the Court agreed that  because the material contains "no 'fact-specific legal advice and communication' it was not privileged. The Court cited from two cases here in the District of Columbia: Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Justice Exec. Office for United States Attorneys, 844 F.3d 246, 255 (D.C. Cir. 2016) (holding that "materials serving no cognizable adversarial function, such as policy manuals, generally would not constitute work product"); American Immigration Council v. U.S. Department of Homeland Security, 905 F. Supp. 2d 206, 221-22 (D.D.C. 2012) (observing that the D.C. Circuit distinguishes between documents "like an agency manual, fleshing out the meaning of the law,

and thus ... not prepared in anticipation of litigation" and documents containing "more pointed advice" that recommend "how to proceed further with specific investigations or advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome").

The *Amadei* court criticized the agency declaration: "The Courey Declaration does not identify any specific training documents by title or provide the number of documents or pages over which privilege is being claimed."  Further, statements in that declaration "do not identify which documents in particular are being withheld or what characteristics or circumstances purportedly render them privileged." Amadei v. Nielsen, 2019 WL 8165492, at *9 (E.D.N.Y. Apr. 17, 2019).

## I-C. THE DEPARTMENT OF JUSTICE HAS NOT SHOWN THAT DISCLOSURE WILL RESULT IN FORESEEABLE HARM TO AN INTEREST PROTECTED BY AN EXEMPTION

The DOJ's argument that disclosure of the 125 documents will result in harm rests upon a few sentences in the Kravitz declaration, ECF # 16-2.

*It is not true that "disclosure would inhibit government lawyers from creating records, for fear that their product may be disclosed to the public"*

Paragraph 9 of the Kravitz declaration, ECF # 16-2, has six sentences. In the third sentence, Mr. Kravitz asserts that disclosure would inhibit the creation of records, because the authors know it would be disclosed to the public at large. This is speculation and counter-intuitive. Most lawyers are pleased if they get published and quoted. Lawyers usually enjoy publicity. If a work is disclosed, a member of the public may offer constructive, useful criticism of it, and improve it. A lawyer who does not want his product to be published is

showing his lack of confidence. If the trainers at the DOJ are not confident of their work, they should do a different job.

*It is not true that "Public release of product will inhibit the instructor's need to be candid"*

In the fifth sentence, Mr. Kravitz asserts that public release will cause the instructor to be less candid. Mr. Kravitz suggests that an instructor may fear criticism; therefore, he will inhibit himself. "But criticism is not a recognized harm against which the ... privilege is intended to protect." *Pavement Coatings v. US Geological Survey,* 995 F. 3d 1014, 1023 (D.C.Cir. 2021). So what if the instructor is criticized. He should instruct as he believes the law dictates.

A good instructor says: "Here is what I think. Tell me your viewpoints. Let's discuss it. Maybe you will convince me I am wrong."

*It is not true that "Public release would inhibit the agency's ability to analyze interpretations and then make recommendations"*

Mr. Kravitz asserts in the sixth sentence that public release "would inhibit the agency's ability to analyze the product and then make recommendations." Assume an instructor wrote a monograph asserting that "Many courts say that the FOIA exemptions should be construed narrowly." The agency can read and analyze the document easily. The document's being made public has no impact on the ability of the agency to analyze. If the public does read it, the public may make suggestions and assist the agency. Mr. Kravitz suggests that if the public reads what an instructor wrote, the *agency* is harmed. Not the instructor, but someone else. Who? Mr. Kravitz does not explain how or why this would be, or how he knows this.

Perhaps the agency would prefer courts to NOT conclude that exemptions should be construed narrowly. If so, one strategy for dealing with this is to lobby Congress and recommend

that the statute be amended. The document's being made public has no impact on the ability of the agency to lobby or recommend.

Mr. Kravitz does not explain how public disclosure of a monograph harms the agency. In *Pavement Coatings v. US Geological Survey,* 995 F. 3d 1014,  (D.C.Cir. 2021), the agency did not want to release computer model runs concerning urban lakes. The agency argued that disclosing a model "would discourage candid discussion."  The Court ruled against the agency, because the agency "does not explain how, if these model runs are disclosed, scientists will cease to conduct model runs in the future or do them differently." 995 F.3d at 1023.

Likewise, in the instant case, Mr. Kravitz does not explain how he knows what instructors would do in the future, or how the instructors would do anything differently.

The FOIA Improvement Act of 2016 added another sub-section: 5 U.S.C. § 552(a)(8)(A).  This amendment allows an agency to withhold a record only if the agency "reasonably foresees harm" upon disclosure. This amendment imposes a "meaningful and independent burden" on agencies. An agency must explain  "the basis and likelihood of that harm must be independently demonstrated for each category of documents."
Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation, 2021 WL 2753938, at *11–12 (D.C. Cir. July 2, 2021). The agency must show that disclosure would "actually impede" the agency going forward. *Id.* at *12. The agency must show the link between the "specified" harm and the "specific" information in each document. *Id* at *11. Mere "cookie-cutter formulations" do not "explain why *actual* harm" would result. *Id.* at *13 [emphasis added].

The DOJ has failed to meet its burden.

*The DOJ has not demonstrated it cannot segregate more portions of the records*

A "blanket declaration" of non-segregability is not enough. *Wilderness Soc. v. U.S. Dept. of Interior,* 344 F. Supp. 2d 1, 19 (D.D.C. 2004).  Long documents usually have segregable sections. Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for United States Att'ys, 844 F.3d 246, 256–57 (D.C. Cir. 2016). (a Blue Book containing 500 pages should be examined for segregability.)

In the instant case, over 2,000 pages are involved. The agency must provide details of those pages, so the Court and plaintiff can assess the feasibility of segregation.

## II.  THE DEPARTMENT OF JUSTICE HAS NOT CONDUCTED A REASONABLE SEARCH FOR RECORDS CONCERNING STUDIES AND ANALYSES DONE IN RESPONSE TO THE FOIA IMPROVEMENT ACT OF 2016

The Fourth Cause of Action, begins at ¶ 23 of the Complaint, ECF. No. 1. Plaintiff requested records "concerning studies, analyses, etc. concerning harm that an agency reasonably foresees upon disclosure of documents, mentioned in the FOIA Improvement Act of 2016, dated from 6-1-15 to the date you begin to process this request." The DOJ received that request in May 2020. The DOJ did not make a final determination within 20 working days. Plaintiff filed the Complaint; DOJ stated in its Answer, ECF # 9, paragraph 29, that it still had not made a final determination.

The DOJ did make a final determination on January 28, 2021, when it stated it found no responsive records. ECF # 13.

*Plaintiff's request does indeed reasonably describe the records sought*

The DOJ argues that plaintiff's request for "studies, analyses" concerning the new "reasonable harm" requirement was too vague. ECF # 16, at 22. But the person who did the

search, Mr. Kravitz, did not find the request to be too vague. His declaration at paragraph 5 states that the Civil Division conducted a search "of its files on the T Drive," and that it found nothing. Mr. Kravitz does not claim the request was too vague.  Mr. Kravitz wrote a "final response" letter to plaintiff on January 28, 2021 [ECF # 16-8].  He states his division did a search, and found nothing. He did not claim the request was too vague. If Mr. Kravitz does not criticize the request, neither should the DOJ in its Opposition.

*The Department of Justice suggests that it did no study or analysis because the law enacted by Congress did not change the law*

The DOJ stated: "DOJ's analysis and guidelines regarding the foreseeable harm standard were actually created in 2009, and that the FOIA Improvement Act of 2016 merely codified the already-existing standard." Note 5, ECF # 16, at 29. In other words, the burdens imposed on agencies did not change in 2016, according to the DOJ.

But this is impossible. There must be some records concerning "studies, analyses, etc. concerning harm that an agency reasonably foresees upon disclosure of documents, mentioned in the FOIA Improvement Act of 2016."

The FOIA Improvement Act of 2016 ["FIA"] changed the law. It imposed significant new burdens upon the government. When Congress imposes new duties upon an agency, the agency must comply. It must examine its current practices, and take steps to comply with the new mandate. It must "study" and "analyse" the situation, and determine how to comply. An agency that does nothing in response to an Act of Congress is saying, in essence, "Congress has wasted its time. We shall ignore what Congress did."

It is impossible that the Department of Justice did nothing in response to the new law. There must be records. The agency should be ordered to search again.

The DOJ also argues that the Office of Information Policy [OIP] was the division that would do studies and analyses. But surely if the OIP did a study, it would share it with the Civil Division.

If the FIA did not change the law, then there is no need to conduct any "studies or analyses." But an agency cannot deem an Act of Congress to be a nullity. *Stone v. INS,* 514 U.S. 386, 397 (1995). Congress believed it was changing the law. Why did Congress believe that? If the DOJ really believes that Congress was wasting its time, the DOJ should explain why. The DOJ should study and analyze why Congress was holding hearings, publishing committee reports, and going through the time-consuming process of getting legislation enacted.

At ECF # 16-4, the DOJ further explained that in 2009, the OIP issued guidance: "Because the FOIA Improvement Act of 2016 codified DOJ's existing standard, and because OIP's guidance on this standard was already established, no new guidance was issued...."

""When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."Stone v. I.N.S., 514 U.S. 386, 397(1995).

""It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." Inhabitants of Montclair Twp. v. Ramsdell, 107 U.S. 147, 152, 2 S. Ct. 391, 395, 27 L. Ed. 431 (1883).

The DC Circuit believes that Congress intended its amendment to have "real and substantial effect." The Circuit does not believe Congress "was ignorant of the meaning of the language it employed."

"In 2016, Congress enacted the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016). That legislation implemented several changes to FOIA that were designed to increase the availability of government records to the public. H.R. Rep. No. 391, 114th Cong., 2d Sess. 1, 7–8 (2016); S. Rep. No. 4, 114th Cong., 1st Sess. 2–5 (2015). "

Reporters Committee for Freedom of the Press v. Fed. Bureau of Investigation, No. 20-5091,

2021 WL 2753938, at *1–2 (D.C. Cir. July 2, 2021).

The D.C. Circuit further said:

Congress adopted the FOIA Improvement Act in part out of "concerns that some agencies [were] overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure." S. Rep. No. 4, 114th Cong., 1st Sess. 2 (2015); *see also* H.R. Rep. No. 391, 114th Cong., 2d Sess. 9 (2016) ("[T]here is concern that agencies are overusing these exemptions to protect records that should be releasable under the law."). Congress was particularly concerned with increasing agency overuse and abuse of Exemption 5 and the deliberative process privilege. H.R. Rep. No. 391, at 9–10 ("The deliberative process privilege is the most used privilege and the source of the most concern regarding overuse."); *see also* S. Rep. No. 4, at 3.

*Id.* at *11.

Our circuit instructed:

Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." H.R. Rep. No. 391, at 9.[2] Agencies cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment" to withhold information. S. Rep. No. 4, at 8. Nor may the government meet its burden with "generalized assertions[.]" *Machado Amadis*, 971 F.3d at 371.

*Id.* at *11.

The D.C. Circuit noticed that the FBI did not change its practices, after the FIA became law. It compared the language in a 2009 agency declaration with the declaration submitted in the 2021 case: "It seems that very little about the FBI's declarations has changed despite passage of the FOIA Improvement Act and its foreseeability requirement." *Id.* at *13.  This observation is consistent with the statements of the DOJ in this case: at ECF # 16-4, the DOJ further explained that in 2009, the OIP issued guidance: "Because the FOIA Improvement Act of 2016 codified DOJ's existing standard, and because OIP's guidance on this standard was already established, no new guidance was issued...."

**CONCLUSION**

The DOJ will suffer no harm if training materials are released. The DOJ must search again concerning its response to the new law. The Court should grant summary judgment in favor of the plaintiff on the Second and Fourth Causes of Action.

Respectfully Submitted,

*s/ David L. Cleveland*
David L. Cleveland
Attorney for Plaintiff
DC Bar # 424209
1220 L Street NW #100
Washington, DC 20005
[202] 812-8684   1949.david@gmail.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOUISE TRAUMA CENTER LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20cv3517 (RC) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE ) | |
| ) | |
| Defendant. ) | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion for Summary Judgment, and for good cause shown, it is hereby:

ORDERED: the motion is GRANTED.

Dated:_____

_____
United States District Court Judge