UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| LOUISE TRAUMA CENTER, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-3517 (RC) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Minute Order of the Court dated June 11, 2022, Defendant United States Department of Justice files its Renewed Motion for Summary Judgment on the remaining grounds in this matter, as all responsive and non-exempt records requested by Plaintiffs pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), were provided, and any information not provided was properly withheld under Exemptions 5 of the Act. In support of its Motion, the Defendant refers this Court to the accompanying Memorandum of Point and Authorities, Renewed Statement of Material Facts as to Which There is no Genuine Issue, Declaration of Elizabeth A. Wood, and Revised Vaughn Index.

A proposed Order is also attached.

Respectfully submitted,

MATTHEW GRAVES
United States Attorney

BRIAN HUDAK
Chief, Civil Division

By:   /s/ *Darrell C. Valdez*
DARRELL C. VALDEZ, D.C. Bar No. 420232
Assistant United States Attorney
Patrick Henry Building
601 D Street, N.W., Civil Division
Washington, D.C.  20530
Telephone: (202) 252-2507
Darrell.Valdez@usdoj.gov

*Counsel for Defendant*

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
LOUISE TRAUMA CENTER, LLC,                )
                                          )
          Plaintiff,                      )
                                          )
          v.                              )          Civil Action No. 20-3517 (RC)
                                          )
U.S. DEPARTMENT OF JUSTICE,               )
                                          )
          Defendant.                      )
_____)

**MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF
DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PROCEDURAL AND FACTUAL BACKGROUND …………………………………………… 2

ARGUMENT……………………………………………………………………………………….2

I.    FOIA EXEMPTION 5 PROTECTS THE REDACTED AND WITHHELD
      PORTIONS OF DOCUMENTS CONTAINING ATTORNEY WORK PRODUCT
      AND DETAILS OF INTRA-AGENCY DECISION-MAKING…..……………..2

      A.  Application of Exemption 5……………………………………………….3

          1.  Deliberative Process Privilege ……..…………………………………3

          2.  Attorney-Client Communication  …..………………………………4

          3.  Attorney Work Product…………………………………………..5

          4.  Foreseeable Harm…………………………………………………...7

      B.  Defendant Properly Applied Exemption 5……………………………...8

          1.  Attorney Training Material are Protected by Exemption 5…………8

          2.  Foreseeable Harm…………………………………………………...9

      C.  Segregation…………………………………..……………………....10

II.      FOIA EXEMPTIONS 6 PROTECTS INFORMATION THAT WOULD
CONSTITUTE A CLEARLY UNWARRANTED INVASION OF THE
PERSONAL PRIVACY OF DEPARTMENT OF JUSTICE EMPLOYEES AND
PRIVATE INDIVIDUALS…………………………………..…..……………..10

A.  Legal Standard for Exemption 6...……………………………………………10

B.  Defendant Properly Applied Exemption 6……………………………………10

CONCLUSION…………………………………………………………………………………15

## TABLE OF AUTHORITIES

*Am. Immigr. Council v. Dep't of Homeland Sec.*,
   905 F. Supp. 2d 206 (D.D.C. 2012) ........................................................... 3

*Brannum v. Dominguez*,
   377 F. Supp. 2d 75 (D.D.C. 2005) ........................................................... 13

*\*Burka v. U.S. Dep't of Health & Human Servs.*,
   87 F.3d 508 (D.C. Cir. 1996) ................................................................... 3

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
   600 F. Supp. 114 (D.D.C. 1984) ............................................................... 4

*\*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) .......................................................... 3, 4, 5

*\*Delaney, Migdail & Young, Chartered v. IRS*,
   826 F.2d 124 (D.C. Cir. 1987) ................................................................. 6

*Dep't of Def. v. Fed. Labor Relations Auth.*,
   510 U.S. 487 (1994) .............................................................................. 12

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) .................................................................................. 3

*Dep't of Just. v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) .............................................................................. 12

*Ditlow v. Shultz*,
   517 F.2d 166 (D.C. Cir. 1975). ............................................................... 12

*Elec. Privacy Info. Ctr., v. DHS*,
   384 F. Supp. 2d 100 (D.D.C. 2005) ......................................................... 13

*Fisher v. United States*,
   425 U.S. 391 (1976) ............................................................................... 4

*Gov't Accountability Project v. U.S. Dep't of State*,
   699 F. Supp. 2d 97 (D.D.C. 2010) ........................................................... 14

*\*Heggestad v. Dep't of Just.*,
   182 F. Supp. 2d 1 (D.D.C. 2000) ....................................................... 5, 6, 9

*Hickman v. Taylor*,
   329 U.S. 495 (1947)) ............................................................................. 5

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014) ................................................. 5

*In re Sealed Case*,
  737 F.2d 94 (D.C.Cir.1984)) ................................................. 4-5

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*,
  841 F. Supp. 2d 142 (D.D.C. 2012) ....................................... 4-5

*Jud. Watch, Inc. v. Dep't of Just.*,
  432 F.3d 366 (D.C. Cir. 2005) ................................................. 5

*\*Jud. Watch, Inc. v. Dep't of State*,
  875 F. Supp. 2d 37 (D.D.C. 2012) ....................................... 13-14

*Judicial Watch v. FDA*,
  449 F. 3d 141 (D.C. Cir. 2006) ............................................. 13

*\*Machado Amadis v. Dep't of Justice*,
  388 F.Supp.3d 11 (D.D.C. 2019) ........................................... 8

*\*Machado Amadis v. Dep't of State*,
  971 F.3d 364 (D.C. Cir. 2020) ............................................... 8

*Mapother v. Dep't of Just.*,
  3 F.3d 1533 (D.C. Cir. 1993) ................................................. 4

*\*Mead Data Cent. v. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ......................................... 3, 5, 9

*Multi Ag Media LLC v. Dep't of Agric.*,
  515 F.3d 1224 (D.C. Cir. 2008) ............................................. 12

*Nat'l Ass'n of Crim. Def. Lawyers v. Dept. of Justice Executive Office of U.S. Attorneys*,
  844 F.3d 246 (D.C. Cir. 2016) ............................................... 6

*Nat'l Ass'n of Home Builders v. Norton*,
  309 F.3d 26 (D.C. Cir. 2002) ............................................... 11

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989)). ........................................... 11

*Nix v. United States*,
  572 F.2d 998 (4th Cir. 1978) ............................................... 12

*\*N.Y. Times Co. v. Nat'l Aeronautics and Space Admin.*,
  920 F.2d 1002 (D.C. Cir. 1990) ....................................... 11-12

*\*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ....................................................... 3-4

*Oguaju v. United States*,
  288 F.3d 448 (D.C. Cir. 2002) ............................................................... 14

*\*Raytheon Aircraft Co. v. U.S. Army Corps of Eng'rs*,
  183 F. Supp. 2d 1280 (D. Kan. 2001) ...................................................... 6

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975) ................................................................................. 4

*Reporters Committee for Freedom of the Press v. U.S. Customs and Border Protection*,
  567 F.Supp.3d 97 (D.D.C. 2021).  ........................................................... 8

*Schiller v. NLRB*,
  964 F.2d 1205 (D.C. Cir. 1992) ............................................................... 6

*Sherman v. U.S. Dep't of the Army*,
  244 F.3d 357 (5th Cir. 2001) ................................................................. 11

*Shurtleff v. EPA*,
  991 F. Supp. 2d 1 (D.D.C. 2013) ........................................................... 14

*\*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C.Cir.1997) ............................................................... 4-5

*\*U.S. Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982) ............................................................................... 11

*Wash. Post Co. v. Dep't of Health & Human Servs.*
  690 F.2d 252 (1982) ......................................................................... 11-12

**Federal Statutes**

5 U.S.C. § 552 ......................................................................... 3, 7, 10, 11

28 U.S.C. §§ 514-519.............................................................................. 4

**MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF
DEFENDANT'S RNEWED MOTION FOR SUMMARY JUDGMENT**

Plaintiff filed multiple Freedom of Information Act ("FOIA") requests with the

Department of Justice ("DOJ") Mail Referral Unit ("MRU") in September 2019, seeking records

from multiple offices within the Department of Justice.  In a written Memorandum Opinion and

Court Order, dated January 30, 2022, this Court denied Plaintiff's Motion for Summary Judgment

and granted, in-part, the Defendant's Cross-Motion for Summary Judgment.  *Id*.; ECF No. 23

(Memorandum Opinion).  The Court denied Defendant's motion with respect to Plaintiff's Second

Cause of Action seeking all Office of Immigration Litigation training material for lawyers in the

Appellate Section.  Court Order (ECF No. 22); ECF No. 23 at 21.

In light of the Court's Memorandum Opinion, Defendant has reviewed the information

withheld.  (1) In its first review, Defendant reviewed 221 pages of records originally withheld in

full, and release 111 pages of training material in full and 24 pages in-part (with redactions made

under Exemptions 5 and 6) on March 15, 2022.  Exh. 7. (2) Defendant made a second

supplemental review of 594 pages of documents originally withheld in full, and on May 27, 2022,

released 462 pages of training documents in full, released 162 pages in-part (with redactions made

under Exemptions 5 and 6), and withheld 17 pages in full (25 pages were found to be duplicates).

Exh. 8.   (3) Defendant made a third supplemental review of 991 pages of records originally

withheld in full, and on April 27, 2022, release 720 pages in full, released 162 pages in-part (with

redactions made under Exemptions 5 and 6), and withheld 125 pages in full.  Exh. 9.  (4)

Defendant made a fourth supplemental review of 2,263 pages of records originally withheld in

full, and on May 11, 2022, released 665 pages in full, released 131 pages in-part (with redactions

made under Exemptions 5 and 6), and withheld 1,176 pages in full (25 pages were found to be

duplicates).  Exh. 10.  (5) Defendant made a fifth supplemental review of 142 pages of training

records originally withheld, and on May 27, 2022, released all 142 pages with some personally

identifiable information such as email addresses and phone numbers of DOJ personnel redacted

under Exemption 6.  Exh. 11.  (6) A sixth supplemental review of 127 pages originally withheld in

full was conducted by Defendant, and on June 9, 2022, Plaintiff was notified that all 127 pages

were being withheld in full under Exemption 5.  Exh. 12.  (7) a seventh and final supplemental

review of 12 videos originally withheld in full was conducted by Defendant and on August 12,

2022, Defendant released 12 videos in part (with redactions made under Exemptions 5 and 6).

Exh. 13.

      At issue in the remaining portion of this FOIA lawsuit is the Defendant's re-review of

material withheld in response to the Court's Memorandum Opinion.  As discussed below and in

the attached Wood Decl. and Updated Vaughn Index (Exh. 14), the Defendant properly withheld

documents and information pursuant to Exemption 5, and the Court should grant Defendant's

Renewed Motion for Summary Judgment and enter judgment in favor of Defendant.

## PROCEDURAL AND FACTUAL BACKGROUND

      The procedural and factual background are set forth in the attached Renewed Statement of

Material Facts Not in Genuine Dispute in Support of Defendant's Motion for Summary Judgment

and are incorporated by reference herein.

## ARGUMENT

**I.**    **FOIA EXEMPTION 5 PROTECTS THE REDACTED AND WITHHELD PORTIONS OF DOCUMENTS CONTAINING ATTORNEY WORK PRODUCT AND DETAILS OF INTRA-AGENCY DECISION-MAKING**

      The sole remaining issue before this Court is Plaintiff's challenge to the Civil Division's

response to Plaintiff's FOIA request for all Office of Immigration Litigation training material for

lawyers in the Appellate Section for 2019.  Pl. Ex. 2 (ECF No. 1-2) (Plaintiff's Second Causes of

Action).  The Defendant appropriately withheld intra-agency training material and analyses that reveal pre-decisional and deliberative matter containing attorney work-product in the form of legal strategy or other legal considerations for attorneys to consider and implement for future litigation under FOIA Exemption 5.

> **A.     Application of Exemption 5**

FOIA Exemption 5 allows agencies to withhold "inter-agency and intra-agency memorandums or letters, which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requestors."  *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 148 (1975).  Thus, Exemption 5 encompasses the deliberative process privilege, the attorney-client privilege, and attorney work-product.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863-64 (D.C. Cir. 1980); *Am. Immigr. Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 216 (D.D.C. 2012).

> 1.   Deliberative Process Privilege

For deliberative, pre-decisional material, the privilege reflects Congress's judgment that public disclosure of pre-decisional, deliberative communications would inhibit "the full and frank exchange of ideas on legal policy matters" within an agency.  *Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977).  It protects, among other material, "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *Sears*, 421 U.S. at 150).  An agency is best

positioned "to know what confidentiality is needed 'to prevent injury to the quality of agency

decisions,'" and, therefore, courts should grant significant weight to an agency's application of the

deliberative process privilege under Exemption 5.  *Chem. Mfrs. Ass'n v. Consumer Prod. Safety*

*Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears,* 421 U.S. at 151).

To withhold a document as deliberative, pre-decisional material, the agency must

demonstrate that the information withheld is "both pre-decisional and deliberative."  *Mapother v.*

*Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  A document is "pre-decisional" when it is

"prepared in order to assist an agency decisionmaker in arriving at his decision," *Renegotiation*

*Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975), and is "deliberative" when it

"reflects the give-and-take of the consultative process,"  *Coastal States*, 617 F.2d at 866.

2.  Attorney-Client Communication Privilege

The attorney-client communication privilege protects disclosures between an attorney and

his/her client necessary to obtain informed legal advice which might not have been made absent

the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).  In the government context, the

client' may be the agency and the attorney may be an agency lawyer, *see Tax Analysts v. IRS*, 117

F.3d 607, 618 (D.C. Cir. 1997), or the agency attorney may be the Department of Justice.  28

U.S.C. §§ 514-519.

To establish the applicability of the attorney-client privilege, the agency must show that:

"(1) the holder of the privilege is . . . a client; (2) the person to whom the communication is made

is a member of the bar . . . and, in connection with the communication at issue, is acting in his or

her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was

informed by his client, outside the presence of strangers, for the purpose of securing legal advice;

and (4) the privilege has been claimed by the client." *Jud. Watch, Inc. v. U.S. Dep't of Homeland*

4

*Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012) (quoting *in re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984)). "[O]btaining or providing legal advice" must have been "one of the significant purposes of the attorney-client communication," but it need not be the only purpose. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014). Importantly, the attorney-client privilege is not limited to the context of litigation. *Mead Data Central,* 566 F.2d at 252.

### 3.   Attorney Work Product

As noted in the Defendant's initial Motion for Summary Judgement, the attorney-work product doctrine protects documents and other records prepared by or for an attorney in anticipation of litigation. *Coastal States*, 617 F.2d at 864 (citing *Hickman v. Taylor*, 329 U.S. 495, 509–10 (1947)). Attorney work product covers an attorney's thoughts and impressions, as well as documents and other memoranda prepared by an attorney in contemplation of litigation. *Id.* at 864 (the attorney work-product doctrine "it provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories"). The purpose of the privilege is to protect the adversary legal system itself, as the integrity of our system would suffer if adversaries were entitled to probe each other's thoughts and plans. *Id.* Thus, the privilege covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories. *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C.Cir.1997); *see also Jud. Watch, Inc. v. Dep't of Just.,* 432 F.3d 366, 371 (D.C. Cir. 2005) ("[F]actual material is itself privileged when it appears within documents that are attorney work-product"); *Heggestad v. Dep't of Just.,* 182 F. Supp. 2d 1, 7-8 (D.D.C. 2000) (the privilege covers factual materials prepared or collected in anticipation of litigation).

"Contemplation of litigation" does not require that an actual case is identifiable or ongoing. *Heggestad,* 182 F. Supp. at 8; *see also Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir.

1992) (the privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated").  "[T]he privilege extends to documents that 'address the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome,' even where the identity of the prospective litigation opponent is unknown."  *Heggestad*, 182 F Supp. 2d at 8 (quoting *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987)).  *See also Raytheon Aircraft Co. v. U.S. Army Corps of Eng'rs,* 183 F. Supp. 2d 1280, 1289 (D. Kan. 2001) (documents containing guidance for agency attorneys on litigation of future environmental law cases is protected under Exemption 5).

That an agency's internal training material or manuals for its attorneys to consider in future litigation may qualify as attorney work product protected by FOIA Exemption 5 has long been recognized by the Circuit Court.  *See Delaney*, 826 F.2d at 127; *Nat'l Ass'n of Crim. Def. Lawyers v. Dept. of Justice Executive Office of U.S. Attorneys*, 844 F.3d 246, 256 (D.C. Cir. 2016).  In order to narrowly apply the exemption in the context of such, the Circuit Court has "drawn a line between 'neutral, objective analyses of agency regulations' and 'more pointed documents' that recommend 'how to proceed further with specific investigations' or 'advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome.'" *Am. Immigr. Council*, 905 F. Supp. 2d at 221–22 (quoting *Delaney*, 826 F.2d at 127).  The Circuit Court has found materials designed to guide "attorneys on one side of an adversarial dispute" on "how to respond to the other side's arguments, which cases to cite, and what material to turn over and when to do so, among numerous other practical and strategic considerations" to be protected by the attorney work product privilege.

*Nat'l Ass'n*, 844 F.3d at 255 (holding that "an internal manual containing litigation strategies" for prosecutors was protected attorney work product).

Once it has been determined that the training material or manual contains protected work product, the next step is to determine the feasibility of segregating that protected content from nonexempt material, such as neutral recitation of legal rules, case law, or office policy, that may also be contained in the training material or manuals. *Nat'l Ass'n*, 844 F.3d at 257. One approach to achieve this is to look at "what proportion of the information in a document [appears to be] non-exempt and how that material is dispersed throughout the document." *See, e.g., Mead Data*, 566 F.2d at 261. Material is more likely to be reasonably segregable in longer documents with "logically divisible sections" that may render the material amenable to segregation and disclosure. *See id*. at 261 n.54. Where, on the other hand, the material is not so compartmentalized but contains some amount of work product along with segregable, non-exempt material subject to disclosure, an agency must provide "a description of which parts of the withheld documents are nonexempt ... and either disclose them or offer adequate justification for continuing to withhold them." *Nat'l Ass'n*, 844 F.3d at 257 (quoting *Mead Data*, 566 F.2d at 260).

4.   <u>Foreseeable Harm</u>

FOIA Exemption 5 is a discretionary exemption in which an agency may withhold information "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by" an applicable FOIA exemption. See 5 U.S.C. § 552(a)(8)(A)(i)(I). An agency establishes a "foreseeable harm" when it "can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'" *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting H.R. Rep. No. 391, at 9). Agencies can meet this burden "on a category-by-category

7

basis rather than a document-by-document basis" by "explain[ing] the harm that would result from release of each group[.]"  *Id.*

While the "foreseeable harm" standard in the context of withholdings made under the deliberative process privilege require a focused and "content specific" demonstration "of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward, *id.*, an agency's burden under the foreseeable harm requirement is more easily met when invoking other privileges and protections, such as the attorney work-product doctrine, for which the risk of harm through disclosure is more self-evident and the potential for agency overuse and abuse of Exemption 5 is attenuated.  *Reporters Committee for Freedom of the Press v. U.S. Customs and Border Protection*, 567 F.Supp.3d 97, 120 (D.D.C. 2021).  Because the law already acknowledges and guards against the risk of harm that would come from disclosing protected material such as attorney work product, the record before the court, along with the agency's explanation, can be sufficient to show that disclosure of the material would impair the relationship between an agency and its attorneys.  *Id.  See also Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 11, 20 (D.D.C. 2019) (finding agency's concern about potential chilling effect of disclosure of attorney work product sufficient to show foreseeable harm), *aff'd sub nom. Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020).

**B.**      **Defendant Properly Applied Exemption 5**

1.  Attorney Training Material are Protected by Exemption 5

Defendant here properly applied Exemption 5 to protect certain information in the documents remaining in dispute in this case.  As set forth in the Declaration of Elizabeth A. Wood, the redacted information includes training and video presentations addressing how to

address and respond to litigation issues that may arise, as well as information obtained from legal

counsel with respect to interpretations of statutes and court opinions, and perceived weaknesses or

strengths in present and future legal arguments and analysis.  Wood Decl. at ¶¶ 7, 10.

Some of the classes included attorney/trainees from the agency client, such as Immigration

and Customs Enforcement and other sections of the Department of Homeland Security.  Vaughn

Index at Final Supp. Resp.- "National Security and Human Rights Removal Grounds and Bars to

Relief and Protection" PowerPoint; and Supp. Resp. 3 - "DHS Removal Orders & Reasonable

Fear Litigation" PowerPoint.  For those outside counsel, the Department of Justice instructors

provided advice and recommendations on how to address legal issues that may arise in matters

handled by those attorneys.  *Id.*

Finally, notices are included throughout the training material that the matter therein is

confidential, protected, and not subject to disclosure outside of attorneys' legal offices.  Such

documents and videos are solidly within the protection of the attorney work-product doctrine.

*Heggestad*, 182 F. Supp. 2d at 8, and the attorney-client communication privilege.  *Mead Data*

*Central,* 566 F.2d at 253.

2.   Foreseeable Harm

The record before this Court, along with the Declaration of Elizabeth A. Wood also

established that disclosing information protected by the attorney work-product doctrine here

would inhibit government attorneys from creating records necessary for the performance of their

duties representing the United States in pending or potential litigation for fear that their mental

impressions and other work product may be disclosed to the public at large.  Wood Decl. at ¶ 8.

Disclosure would most certainly inhibit the agency's ability to analyze its legal professionals'

interpretations and perception of legal weaknesses or strengths, and the agency's ability to make

and communicate recommended strategies to its attorneys for dealing with those anticipated legal issues. *Id.* Accordingly, releasing the information described above would cause foreseeable harm to the agency's deliberative process and legal privileges.

     **C.**    **<u>Segregation</u>**

     The FOIA generally requires that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The record demonstrates that Defendant, did in fact, review, segregate, and produce all matter that fell outside of the deliberative process/attorney work-product protections. Wood Decl. at ¶ 10. Indeed, the very purpose of these further proceedings is for Defendant to make a re-review of the responsive documents and carefully cull through the training material in order to segregate and produce material that contained purely logistical instruction that was not created in anticipation of immigration litigation. Only agency training material, analyses, and intertwined facts that reveal pre-decisional and deliberative matter containing attorney-client communication and attorney work-product in the form of legal strategy or other legal considerations for attorneys to consider and implement for future litigation were withheld under FOIA Exemption 5. *Id.*

**II.**    **FOIA EXEMPTIONS 6 PROTECTS INFORMATION THAT WOULD CONSTITUTE A CLEARLY UNWARRANTED INVASION OF THE PERSONAL PRIVACY OF DEPARTMENT OF JUSTICE EMPLOYEES AND PRIVATE <u>INDIVIDUALS</u>**

     The Defendant also properly withheld documents in part pursuant to FOIA Exemption 6 because disclosure of the withheld information would constitute a clearly unwarranted invasion of the personal privacy of certain Department of Justice employees and private individuals.

     **1.**    **<u>Legal Standard for Exemption 6</u>**

     Exemption 6 requires an agency to consider the personal privacy of the subject of the

requested records.  Specifically, Exemption 6 prohibits the release of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 599 (1982).

The threshold question for an agency justifying its withholding of a record pursuant to Exemption 6 is whether the records in question are personnel, medical or similar information. *N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1004 (D.C. Cir. 1990). While "personnel and medical files" are easily identified, the term "similar files" is not.  In *Wash. Post.*, however, the Supreme Court firmly held the term is to be interpreted broadly rather than narrowly.  *Id*. at 599-603.  The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." *Id*. at 601.  Rather, the Court made clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection.  *Id*. at 602; *see also Sherman v. U.S. Dep't of the Army*, 244 F.3d 357, 361 (5th Cir. 2001) (recognizing the "Supreme Court has interpreted exemption 6 'files' broadly to include any 'information which applies to a particular individual'").  Therefore, the threshold inquiry requires a court to look not to the "'the nature of the file[ ] in which the information [is] contained,' but solely to whether the information in the file 'applies to a particular individual.'"  *N.Y. Times*, 920 F.2d at 1007 (citing *Wash. Post*, 456 U.S. at 599, 602).

In considering the scope of the "similar files" language, the D.C. Circuit "has observed that Exemption 6 'is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature[.]'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32

(D.C. Cir. 2002) (citing *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989)).  The D.C. Circuit has previously described this threshold as "minimal."  *Wash. Post Co. v. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (1982); *see also Dep't. of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 776 (1989)*.* ("categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction").  This protection also applies to information regarding government employees.  *N.Y. Times*, 920 F.2d at 1009-10.  Thus, the D.C. Circuit held that the recorded voices of the NASA astronauts on the Space Shuttle Challenger constituted information that applies to particular individuals and, therefore, were "similar files" for purposes of Exemption 6.  *Id*

   Once the threshold determination is satisfied, the court must weigh the privacy interests implicated by the release of the requested records against the public's interest in their disclosure. *Reporters Comm.*, 489 U.S. at 762; *Nix v. United States*, 572 F.2d 998, 1002 (4th Cir. 1978). Exemption 6 bars any disclosure that "would constitute" an invasion of privacy that is "clearly unwarranted."  *Wash. Post Co.*, 690 F.2d 252 at 260.  An individual's privacy interest in non-disclosure of information is "substantial" if it is more than *de minimis*.  *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008) ("A substantial privacy interest is anything greater than a *de minimis* privacy interest.").

   When weighing the privacy interest against the public interest in disclosure, the Supreme Court has noted that "the only relevant public interest to be weighed in this balance is the extent to which disclosure would serve FOIA's core purpose of contributing *significantly* to public understanding of the Government's operations or activities.  *Dep't of Def. v. Fed. Labor Relations Auth*., 510 U.S. 487 (1994) (emphasis added).  In addition, the D.C. Circuit has long held that the

public interest contemplated by FOIA is that of the general public, not a private litigant. *Ditlow v. Shultz*, 517 F.2d 166, 171-72 (D.C. Cir. 1975).

   **2.  The Defendant Properly Applied Exemption 6**

   In this case, the Defendant properly applied Exemption 6 to protect Department of Justice employees' contact information, information associated with persons who appear in the training videos, and private alien numbers and immigration files.  Wood Decl. at ¶ 7; *generally,* Vaughn Index.  These persons have a substantial privacy interest in the withheld information.  Courts have recognized that U.S. Government employees possess protectable privacy interests in their identities when release of that information could cause the employees harassment and embarrassment, including in the conduct of their official duties.  *See Brannum v. Dominguez*, 377 F. Supp. 2d 75, 84 (D.D.C. 2005) (upholding redaction of Air Force officials' names and signatures under Exemption 6).  Furthermore, courts have recognized that the particular policies or matters with which U.S. Government employees are associated can heighten the employees' privacy interests in non-disclosure of their identities.  *See, e.g., Elec. Privacy Info. Ctr.*, *v. DHS*, 384 F. Supp. 2d 100, 116-17 (D.D.C. 2005) ("threat to the privacy of DHS and TSA personnel derives from the nature of their employment . . . [a]s 'advocates for security measures that may be unpopular,' DHS and TSA employees are likely to experience annoyance or harassment following the disclosure of their involvement"); *Judicial Watch v. FDA*, 449 F. 3d 141, 152-53 (D.C. Cir. 2006) (upholding the redaction of the names of Food and Drug Administration employees involved in the regulatory approval of a controversial drug)).  "[I]ntense scrutiny by the media that would likely follow disclosure" is one such harm that supports the finding of a substantial privacy interest in U.S. Government employee identities.  *Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp 2d 37, 46 (D.D.C. 2012).

As a threshold matter, all of the records withheld in part under Exemption 6 in this case contain information that pertains to particular individuals.  Wood Decl. at ¶¶ 7, 9.  Applying the well-established case law, the challenged records are therefore "similar files" eligible for withholding pursuant to Exemption 6.  *See, e.g.*, *Judicial Watch*, 875 F. Supp. 2d at 47 ("The emails here, which contain names, titles, offices and phone numbers, qualify as similar files because they contain personal information about the named government personnel.").

Release of this information could cause "harassment, unwanted attention and unsolicited communications and would not shed light on the operations of the U.S. Government."  *See Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18–19 (D.D.C. 2013) (EPA email addresses properly withheld based on privacy interest); *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) ("[T]he private individuals mentioned in these records have a clear privacy interest in avoiding the disclosure of their personal email addresses.").  Disclosure of this contact information would in no way advance the public's understanding of government activity.  In the absence of a public interest in the disclosure of the information withheld by the Defendant, any privacy interest will tilt the scale in favor of withholding the information, because, as the D.C. Circuit cogently observed, "something outweighs nothing, every time."  *Oguaju v. United States*, 288 F.3d 448, 451 (D.C. Cir. 2002), *judgment vacated*, 501 U.S. 970 (2004), *judgment reinstated,* 378 F.3d 1115 (D.C. Cir. 2004), *modified on other grounds*, 386 F.3d 273 (D.C. Cir. 2004) (citing *Horner*, 879 F.2d at 879).  This information is therefore exempt under Exemption 6.

Defendant further withheld identifying information about non-government individuals who appeared in the training videos.  The Defendant withheld the showing of employees' homes in the videos, as well as employees' family members who appear in the background of videos.  Wood Decl. at ¶ 7; Vaughn Index at Videos.  And further withheld information from immigration files

containing personal immigration "alien" numbers and other information of private persons seeking

residency or citizenship in the United States.  Vaughn Index at Final Supp. Resp. –

"Administrative Record Review" Jennifer Lightbody PowerPoint; Supp. Resp. 3 - "Crimmigration

Case Study"; and Supp. Resp. 2 - DHS Removal Orders Video.  Disclosure of private citizens'

likeness or personal information would subject the immigrants, Department of Justice employees,

and their family members to harassment, unwanted attention, unsolicited communications, and

potential personal harm.  Wood Decl. at ¶ 9.  The information therefore implicates substantial

privacy interest that outweighs any public interest in disclosure.

## CONCLUSION

Wherefore, for the reasons set forth above and in the accompanying Statement of Material

Facts Not in Genuine Dispute, Defendant respectfully request that the Court enter judgment in

favor of the Defendant.

Respectfully submitted,

MATTHEW GRAVES
United States Attorney

BRIAN HUDAK
Chief, Civil Division


*/s/ Darrell C. Valdez*
DARRELL C. VALDEZ, D.C. Bar No. 420232
Assistant United States Attorney
Patrick Henry Building
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2507
Darrell.Valdez@usdoj.gov

*Counsel for Defendant*