UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LOUISE TRAUMA CENTER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-3517 (RC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

**OMNUBUS REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION....................................................................................................................1

I.   DEFENDANT PROPERLY WITHHELD ATTORNEY TRAINING
     MATERIAL UNDER EXEMPTION 5 ........................................................................1

A.  Attorney Work-Product and Attorney-Client Communication................................................2

     1.   Legal Training Material and the Attorney Work-Product Doctrine................................2

     2.   Training Material and the Attorney-Client Communication Privilege ..........................6

     3.   The Attorney Work-Product Doctrine/Attorney-Client Communication
          Privilege and "Foreseeable Harm" ...................................................................9

B.  Training Material and the Deliberative Process ..................................................................10

     1.   Training Material May Be Deliberative Process............................................................10

     2.   Deliberative Process and Foreseeable Harm ................................................................11

II.  CONCLUSION  .........................................................................................................13

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                          **Page(s)**

*ACLU v. CIA*,
 710 F.3d 422 (D.C. Cir. 2013) ........................................................................................... 4

*Conservation Force v. Jewell*,
 66 F.Supp.3d 46 (D.D.C. 2104) ........................................................................................ 7

*Council v. Dep't of Homeland Sec.*,
 905 F. Supp. 2d 206 (D.D.C. 2012) .................................................................................. 2

*\*Delaney Migdail & Young, Chartered v. IRS*,
 826 F.2d 124, 127 (D.C. Cir. 1987) .................................................................................. 2

*\*Nat'l Ass'n of Crim. Def. Lawyers v. Dept. of Justice Executive Office of U.S. Attorneys*,
 844 F.3d 246 (D.C. Cir. 2016) ....................................................................................... 3, 4

*Federal Open Market Committee v. Merrill*,
 443 U.S. 340 ...................................................................................................................... 9

*FTC v. Grolier, Inc.*,
 462 U.S. 19 ......................................................................................................................... 9

*Gallant v. NLRB*,
 26 F.3d 168 (D.C. Cir. 1994) ............................................................................................. 4

*\*Heggestad v. Dep't of Justice*,
 182 F. Supp. 2d 1 (D.D.C. 2000) ...................................................................................... 3

*Hickman v. Taylor*,
 329 U.S. 495 (1947) ........................................................................................................... i

*\*In re Kellogg Brown & Root, Inc.*,
 756 F.3d 754 (D.C. Cir. 2014) ........................................................................................... 7

*\*In re Regents of Univ. of Cal.*,
 101 F.3d 1386 (Fed. Cir. 1996) ......................................................................................... 7

*\*James Madison Project v. Dep't of Justice*,
 436 F.Supp.3d 195 (D.D.C. 2020) .............................................................................. 10, 11

*Johnson v. Exec. Office for U.S. Attorneys*,
 310 F.3d 771 (D.C. Cir. 2002) ........................................................................................... 5

*Judicial Watch, Inc. v. Dep't of the Navy*,
  971 F. Supp. 2d 1 (D.D.C. 2013) ................................................................. 4

*Judicial Watch, Inc. v. FDA*,
  449 F.3d 141 (D.C. Cir. 2006) ................................................................... 4

*\*Judicial Watch, Inc., v. Dep't of Justice*,
  432 F.3d 366 (2005) ............................................................................ 1, 9

*Michael v. Dep't of Justice*,
  C.A No. 17-0197 (ABJ), 2018 WL 4637358 (D.D.C. September 27, 2018) ................ 5

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) .............................................................................. 5

*Nat'l Security Counselors v. CIA*,
  206 F. Supp. 3d 241 (D.D.C. 2016) ............................................................ 8

*NLRB v. Sears Roebuck & Co.*,
  421 U.S. 132 (1975) .............................................................................. 9

*\*Reporters Comm. For Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ............................................................. 9, 11, 12

*\*Reporters Committee for Freedom of the Press v. U.S. Customs and Border Protection*,
  567 F. Supp. 3d 97 (D.D.C. 2021) ............................................................ 9

*SafeCard Servs., Inc. v. S.E.C.*,
  926 F.2d 1197 (D.C. Cir. 1991) ................................................................ 4

*\*Schiller v. NLRB*,
  964 F.2d 1205 (D.C. Cir. 1992) ................................................................ 3

*\*Toensing v. Dep't of Justice*,
  999 F. Supp. 2d 50 (D.D.C. 2013) ........................................................ 4, 5, 6

*Vaughn v. United States*,
  936 F.2d 862 (6th Cir.1991) .................................................................... 4

*Wolfe v. U.S Dep't of Health & Human Servs.*,
  839 F.2d 768 (D.C. Cir. 1988) ................................................................. 11

**INTRODUCTION**

Defendant, the United States Department of Justice ("DOJ"), by and through undersigned counsel, respectfully submits this combined reply in further support of Defendant's Renewed Motion for Summary Judgement (ECF Nos. 28-29) and memorandum in opposition to Plaintiff's Cross-Motion (ECF No. 31) in the Freedom of Information Act ("FOIA") litigation.

**I.   DEFENDANT PROPERLY WITHHELD ATTORNEY TRAINING MATERIAL UNDER EXEMPTION 5**

The Defendant appropriately withheld intra- and inter-agency training material and analyses that reveal pre-decisional and deliberative matter and further contain attorney work-product and attorney-client communications in the form of legal strategy or other legal considerations for DOJ and Department of Homeland Security ("DHS") attorneys to consider and implement for future litigation under FOIA Exemption 5.

Plaintiff begins its Cross-Motion/Opposition to Defendant's Motion for Summary Judgment ("Pl. Cross-Mot./Opp.") by attacking DOJ's assertion of the deliberative process privilege to documents that reflect DOJ's non-final views and suggestions on how to handle matters the come before attorneys assigned to handle immigration matters.  Pl. Cross-Mot./Opp. at 3-7.  While the deliberative process privilege is correctly asserted and sufficiently supported by the Declarations and Updated *Vaughn* Index filed in this matter, its application is actually secondary to the concurrently-applied Attorney Work-Product Doctrine and the Attorney-Client Communication Privilege, which cover the same records, are to be "interpreted broadly," and held "largely inviolate." *Judicial Watch, Inc., v. Dep't of Justice*, 432 F.3d 366, 369 (2005) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-511 (1947)).  Accordingly, because deliberative process is subsumed and overwhelmed by the concurrently-applied Attorney Work-Product Doctrine and the Attorney-Client

Communication Privilege, this Reply will discuss those protections first before turning to deliberative process.

### A. Attorney Work-Product and Attorney-Client Communication

1. <u>Legal Training Material and the Attorney Work-Product Doctrine</u>

It is interesting and appropriate to note that Plaintiff fails to cite any caselaw in support of its arguments regarding the application of the Attorney Work-Product Doctrine and the Attorney-Client Communication Privilege (and even deliberative process).  Instead, Plaintiff selectively takes snippets from Defendant's Memorandum in Support of the Motion for Summary Judgment regarding the application of the Attorney Work-Product Doctrine to Exemption 5 and argues that Defendant must specify a particular "investigation" or "program" to support the application of the doctrine to the training material withheld.  Pl. Cross-Mot./Opp. at 9-12.  Plaintiff's selective quote, however, fails to contain the rest of the Defendant's argument that the doctrine also includes "advice" given by an agency to attorney-trainees regarding "the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome."  ECF No. 28 at 13 of 22 (quoting *Am. Immigr. Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 221-22 (D.D.C. 2012) and *Delaney Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987)).

Plaintiff's failure to cite any relevant case law is not accidental, as the case law supports the withholding of training material such as that withheld by Defendant in this matter.  *See Delaney*, 826 F.2d at 127 (work-product includes advice by the agency "of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome. Similarly, plaintiff here is not trying to ascertain the agency's view of the law in order to comply or to advise clients on how to comply; it is seeking the agency's attorneys' assessment of

the program's legal vulnerabilities in order to make sure it does not miss anything in crafting its legal case against the program. This is precisely the type of discovery the Court refused to permit in *Hickman v. Taylor*."); *Nat'l Ass'n of Crim. Def. Lawyers v. Dept. of Justice Executive Office of U.S. Attorneys*, 844 F.3d 246, 256 (D.C. Cir. 2016) (Work-Product doctrine protects "case-handling tips and tactical advice for litigating discovery matters [] in addition to legal analysis" and "a comprehensive set of strategic considerations, procedures, and practical advice," much of which is "interspersed within the legal analysis"). The case law further does not require the specification of any particular investigation for the Work-Product Doctrine to apply. *See Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (the privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated"); and *Heggestad v. Dep't of Justice,* 182 F. Supp. 2d 1, 7-8 (D.D.C. 2000) ("Contemplation of litigation" does not require that an actual case is identifiable or ongoing).

In any event, even if the Court were to apply Plaintiff's standard, the "program" subject to attorney work-product protection was specifically identified when Defendant provided Plaintiff with the agendas of each training program, including the title and instructor. Wood Decl. at ¶ 10. Additionally, the specific title of each program and the reason for the application of the attorney work-product doctrine was set forth with sufficient description in the Updated Vaughn Index. ECF No. 29-1.

Plaintiff further faults the Defendant for not explaining in its Declarations or Updated *Vaughn* Index what is "neutral recitation of legal rules [or legal strategy] and what is not." Pl Cross-Mot./Opp. at 10. Aside from the fact that these terms are obviously self-explanatory, the Circuit Court has already set out the specifications as to what is protected legal strategy or advice and what is not. In *Nat'l Ass'n of Crim. Def. Lawyers*, the Circuit Court defined the protected matter as case-

handling tips and tactical advice for future-potential litigation, including suggested litigation strategy to government lawyers, advice on discovery practices, potential strategic and logistical concerns, interpretations of law and risk assessments in light of relevant legal authority, practice notes, techniques, procedures, and legal strategies that in-the-field attorneys may and do employ during the course of litigation.  844 F.3d at 256.  *See* Supplemental Declaration of Elizabeth Wood ("Supp. Wood Decl.") at ¶ 4.  "Neutral" matter, on the other hand, includes a neutral recitation of legal rules or case law, such as a compilation of cases or procedures "in the manner of a treatise" that contains no legal analysis nor advice.  *Id.* at 255.

Finally, Plaintiff argues that the Declarations and Updated *Vaughn* Index submitted by Defendant are insufficient to demonstrate the protection of the Work-Product Doctrine.  Pl Cross-Mot./Opp. at 11-20.  A *Vaughn* index must be "sufficiently distinct to allow a court to determine . . . whether the specific claimed exemptions are properly applied."  *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994) (quoting *Vaughn v. United States*, 936 F.2d 862, 868 (6th Cir.1991)).  Brevity, however, does not render it insufficient, so long as it "indicates in some descriptive way which documents the agency is withholding and which FOIA exemption it believes apply." *ACLU v. CIA*, 710 F.3d 422, 432 (D.C. Cir. 2013).  Indeed, the Circuit Court has made it clear that "a *Vaughn* index may also contain brief or categorical descriptions when necessary to prevent the litigation process from revealing the very information the agency hopes to protect."  *Id*. (citing *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).  The *Vaughn* Index and the justifications contained therein are presumed to be submitted in good faith.  *See SafeCard Servs., Inc. v. S.E.C*., 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Judicial Watch, Inc. v. Dep't of the Navy*, 971 F. Supp. 2d 1, 3 (D.D.C. 2013).

Applying these standards, the District Court in *Toensing v. Dep't of Justice*, 999 F. Supp. 2d 50 (D.D.C. 2013), noted that the absence of the dates of the documents' creation and the names of their authors are irrelevant to a determination of whether the documents are protected as Attorney Work-Product. *Id*. at 59. Rather, so long as the *Vaughn* index and any accompanying Declaration identify the document as having been prepared by attorneys and each document's description adequately explains the nature of the document and why it is subject to the privilege, the government agency has properly supported the protection of the Work-Product Doctrine. *Id*.

Here, the evidence submitted by DOJ adequately sets forth specific information regarding the context and content of the material withheld to demonstrate that it falls squarely within the protection of the Attorney Work-Product Doctrine. To provide context, Plaintiff was provided with the agendas of each training program, including the title and (attorney) faculty of each program session in order to demonstrate that the participants and content were within the zone of protection of the work-product doctrine. Wood Decl. at ¶ 10. Next, a description of the course content from which the record or matter was withheld (for example, "training material that provides analysis of case law, suggested direction, and advice to agency lawyers on how to litigate future cases within a certain area of law") was provided to show that the redactions were properly limited to only that which fit the Circuit Court's definition of *Nat'l Ass'n of Crim. Def. Lawyers*. ECF No. 29-1. Plaintiff's mere labeling of the descriptions and content as "insufficient" does not provide the requisite evidentiary basis for questioning the good faith presumption afforded to the government's evidence. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002); *see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (requestor must produce **some evidence** that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred" in order to gain disclosure) (evidence added); *Michael v. Dep't*

*of Justice*, C.A No. 17-0197 (ABJ), 2018 WL 4637358 * 13 (D.D.C. September 27, 2018) (presumption that agency complied with obligation to disclose non-exempt material can only be "overcome by some 'quantum of evidence' from the requester").

    2.  <u>Training Material and the Attorney-Client Communication Privilege</u>

    Likewise, the Defendant properly redacted material that fell within the protection of the Attorney-Client Communication Privilege. In its Cross-Mot./Opp., Plaintiff continues in its failure to cite any caselaw in support of its substantive arguments regarding the application of the Privilege. *See* Pl. Cross-Mot./Opp. at 7-8. Plaintiff also continues in its selective citation to the record to create the mis-impression that the Privilege is not supported by the record. For example, Plaintiff claims that the Wood Decl. is devoid of any reference to the Attorney-Client Communication Privilege. Pl. Cross-Mot./Opp. at 7. In fact, the Wood Decl. not only references the Privilege, ECF No. 28-2 at ¶ 6, it also references and incorporates the *Vaughn* Index, which provides a more detailed description of the records withheld and the privileges, including the Attorney-Client Communication Privilege, invoked to withhold them. Wood Decl. at ¶ 7. The *Vaughn* Index sets forth each instance of an assertion of the privilege by directing the Court to the page and title of the training lecture, as well as a description of the information withheld sufficient to provide the Court with sufficient information to identify the document as having been prepared or presented by DOJ attorneys and why it is subject to the Privilege. *See Toensing*, 999 F. Supp. 2d at 57. Finally, the cover letters provided to Plaintiff with each production, and attached to the Defendant's Motion as Exhibits 7, 8, 9, 10, 12, and 13, inform Plaintiff that documents were withheld pursuant to the Attorney-Client Communication Privilege. *See* ECF Nos. 28-3, 28-4, 28-5, 28-6, 28-8 (PRAO records), and 28-9. Thus, the record is full of references to the Attorney-

Client Communication Privilege, and Plaintiff claim to the contrary has no support in the evidence before this Court.  *See also* Supp. Wood Decl. at ¶ 4.

      Another example of Plaintiff's selective quotes or citations involves its claims that Defendant failed to identify the "attorney" or the "client."  Pl. Cross-Mot./Opp. at 7.  As explained in the Defendant's Renewed Motion for Summary Judgment, in the government context such as the training at issue, the "client" is an agency or an individual within the agency, and the "attorney" is an agency lawyer or an attorney with the Department of Justice.  ECF No. 28 at 11 of 22.  Moreover, as note, *supra*, Plaintiff was provided with the agendas of each training program, which identified the attorney faculty of each program session in order to demonstrate that the participants and content were within the zone of protection of the privilege.  Wood Decl. at ¶ 10.  Advice from a mentor or training attorney about how to comply with legal duties is exactly the sort of communication "for the purpose of obtaining or providing legal advice" protected by the attorney-client privilege.  *In re Kellogg Brown & Root, Inc*., 756 F.3d 754, 757 (D.C. Cir. 2014).  Government officials no less than others "seek legal advice and assistance in order to meet legal requirements and to plan their conduct; such steps serve the public interest in achieving compliance with law and facilitating the administration of justice, and indeed may avert litigation."  *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996); *see also Conservation Force v. Jewell*, 66 F.Supp.3d 46, 63 (D.D.C. 2104) ("The Vaughn Index contains further support for a finding that the attorney-client privilege applies, because the entries that invoke the attorney-client privilege as a basis for the redactions explicitly include such notations as the fact that '[a]ttorneys were discussing with [agency employees] how to respond to opposing counsel[,]' . . ., or that the 'legal implications of [a] complaint' were being discussed . . .; and with respect to pertinent emails, the subject titles plainly reflect legal work, such as a motion for

attorneys' fees in litigation . . ., a draft motion vacating a remand order . . ., or a settlement

recommendation") (citation to Vaughn Index omitted).  As such, Plaintiff's claim that the "advice"

at issue here was not "solicited" by the trainees or their agency component is unsupported, as the

attendance to the training session signifies a request to be educated as to those obligations and

suggested approaches to legal issues as they arise.  So long as the training material is "comprised

of legal advice and examples provided by [the agency's] attorneys to assist in the preparation of

training materials for [agency] employees responsible for" handling the matters discussed in the

training, it is properly redacted under Exemption 5.  *Nat'l Security Counselors v. CIA*, 206 F.

Supp. 3d 241, 286 (D.D.C. 2016).

Because the application of Exemption 5 to information privileged from production in

discovery is contextual, the attorney-client relationship is discernable from the very subjects of the

training and the Updated *Vaughn* Index.  For example, for the "Professional Responsibility

Advisory Office ("PRAO") Training PowerPoint," the Updated Vaughn Index sets out that PRAO

is the ethics counsel to DOJ attorneys, and the records withheld provide legal advice on how to

recognize and analyze  professional responsibility issues that may arise in particular situations in

which they represent the United States," by providing "PRAO's legal analysis of professional

responsibility questions, with reference to specific situations faced by DOJ attorneys," that

includes "guidance on recommended conduct and legal arguments to support specific types of

conduct or to respond to challenges to that conduct."  ECF No. 29-1 at 50-51.[1]

Likewise, other classes, such as "Professional Responsibility in Immigration Litigation,"

*id.* at 17, and "Professional Responsibility Issues – OIL Litigation Part II," *id.* at 33, provide legal

---

[1]     Nor does the fact that the training discusses how to comply with professional responsibility
regulations or policy turn the training itself into "policy."  *Nat'l Security Counselors*, 206 F. Supp.
3d at 286.

advice to agency attorneys in complying with their professional responsibility obligations. *Id.* at 17.  Because these training courses contain legal advice from the experienced attorney to the trainees on how to respond to potential legal situations and or arguments, Supp. Wood Decl. at ¶ 4. they are protected under the Attorney-Client Communication Privilege and exempt from production under Exemption 5 of the FOIA.

   3.   The Attorney Work-Product Doctrine/Attorney-Client Communication Privilege and "Foreseeable Harm"

In Pl. Cross-Mot./Opp., Plaintiff fails to address the case law provided by Defendant that the foreseeable harm standard for the deliberative process exemption as set forth in *Reporters Comm. For Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), is inapplicable to the Attorney Work-Product Doctrine or the Attorney-Client Communication Privilege.  The Court of Appeals has long-ago held that courts are not to conflate the production/withholding of deliberative process with that of work-product or attorney-client communication for the purpose of Exemption 5.  *Judicial* Watch, 432 F.3d at 371-72.  The privileges and protections of an attorney's thought, impressions, and communications are more stringently protected under Exemption 5 than that of deliberative process.  *See id.*; *see also Federal Open Market Committee v. Merrill*, 443 U.S. 340, 360 n. 23 (1979) ("we note that [*NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 160 (1975)] itself held that a memorandum subject to the affirmative disclosure requirement of § 552(a)(2) was nevertheless shielded from disclosure under Exemption 5 because it contained a privileged attorney's work product).  Notably, because the legal privileges and protections are held inviolate, even the generally accepted civil discovery exceptions to those privileges and protections, such as the "necessity and undue hardship" exception to attorney work product, do not apply in the FOIA context.  *FTC v. Grolier, Inc.*, 462 U.S. 19. 27-28 (1983).  Because risk of harm through disclosure of attorney work-product and attorney-client communication is more self-

9

evident, the information provided by Defendant here is sufficient. *Reporters Committee for Freedom of the Press v. U.S. Customs and Border Protection*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021).

Even if the Defendant's explanation of its foreseeable harm to the redacted attorney work-product and attorney-client communication was insufficient, which it was not, Defendant has now provided a Supplemental Declaration of Elizabeth Wood ("Supp. Wood Decl.") that sets forth a more detailed explanation of the Defendant's foreseeable harm analysis. The supplemental declaration sets out both the nature of the harm that would result from release of the exempt record, as well as the link between the specified harm and the specific information being withheld. Supp. Wood Decl. at ¶ 5.

Accordingly, the Defendant has demonstrated that the material withheld or redacted is protected by Exemption 5, and the Court should enter judgment in favor of the DOJ.

**B. Training Material and the Deliberative Process**

Because the information withheld as deliberative process includes and is subsumed by the overlapping assertions of attorney work-product and attorney-client communication, any argument with respect to this third Exemption 5 protection is superfluous. Nevertheless, the information cited in the Updated *Vaughn* Index as protected by deliberative process is protected and properly redacted.

1.   Training Material May Be Deliberative Process

Despite the skepticism expressed by Plaintiff, legal advice or training provided inter-agency may be subject to a discovery privileged and deliberative process. In *James Madison Project v. Dep't of Justice*, 436 F.Supp.3d 195 (D.D.C. 2020), the District Court held that recommendations for prosecution from the CIA Office of General Counsel to the DOJ was

protected as both attorney work-product and deliberative process.  *Id.* at 204.  The CIA withheld

pre-decisional communications that occurred within the CIA as well as between the CIA, FBI, and

DOJ, including case updates, investigative reports, and memoranda containing recommendations

and other deliberations regarding whether disciplinary or legal action was warranted.  *Id.*  The

Court recognized that there is often overlap between the various forms of protection under

Exemption 5, and that material may be withheld on multiple grounds.  *Id.*  Citing the Circuit

Court's decision in *Wolfe v. U.S Dep't of Health & Human Servs*., 839 F.2d 768, 774-75 (D.C. Cir.

1988), the District Court found that because CIA Office of Inspector General communications to

the DOJ that contained legal analysis and recommendation regarding prosecution were not final or

binding decisions of its own, meaning that DOJ was not bound by the recommendations of the

CIA Office of the General Counsel, they were properly protected by deliberative process, among

others.  *Id.*

      Nor does the fact that the information flow came from the instructor change the application

of deliberative process.  *Reporters Committee*, 3 F.4th at 364 (There is no such directional

precondition to protection under the deliberative process privilege). When an internal agency

dialogue is underway, communications by both the giver and the taker can fall within the

privilege.  *Id.*  Here, the training material provided by the instructor and redacted here are not

orders or commands based on policy, rather they contain recommendation that were not binding or

final on their own but rather were given to the trainees to use in their discretion when confronting

future litigation.  *See e.g.,* Supp. Wood Decl. at ¶ 6.

      2.    <u>Deliberative Process and Foreseeable Harm</u>

      In his Opposition, Plaintiff makes the claim that the Wood Decl. makes three "umbrella"

assertions of foreseeable harm that do not satisfy the requirements set forth by the Circuit Court in

*Reporters Committee*.  Pl. Cross-Mot/Opp. at 6-7.  Under *Reporters Committee*, an agency may satisfy the standard by explaining "the importance and deliberative value of the specific information in those records in the particular decisional context in which they arose, as well as the precise damage to the relevant agency operations that would result from their release."  3 F.4th at 371-72 (citing *Machado Amadis*, 971, F.3d at 371).

Here, the information withheld consists of advice, strategies, analysis, and legal authorities on which DOJ attorneys can rely in anticipation of potential litigation.  The Wood Declaration, along with the Supplemental Wood Declaration set forth the precise damage that would result from making that training public.  Attorneys' candid mental impressions and assessments of recent decisions of the federal courts would harm the attorney's effectiveness before those adjudicative bodies, should they become public.  Supp. Wood Decl. at ¶ 5.  The issues addressed include matters such as presenter's view on the weakness of the case decision and application of that decision to future cases, Updated *Vaughn* Index at 1; weaknesses in opposing parties' claims and how to address those weaknesses, *id.* at 4; attorney views on recent decisions and how the decision is not defensible in light of other legal analysis, *id.* at 6; how to brief issues for a favorable outcome, *id.* at 7 and 9; candid thoughts regarding an analysis by an Immigration Judge, *id.* at 47; how to handle a situation where material is missing from the record, *id.* at 50.  Though this is not an exhaustive list of the documents designated as deliberative process, they are demonstrative as to how the publication of that training would give opposing counsel insight the suggested arguments and tactics, which, in turn, would undermine the DOJ's ability to train its attorneys to be effective in litigation.

II.     **<u>CONCLUSION</u>**

Because the Defendant has adequately set forth the applicable protection and precise harm

that would result from the disclosure of material designated as protected by FOIA Exemption 5, the

Court should enter judgment in favor of Defendant.

                                    Respectfully submitted,

                                    MATTHEW M. GRAVES
                                    United States Attorney

                                    BRIAN P. HUDAK
                                    Chief, Civil Division


                                    */s/ Darrell C. Valdez*
                                    DARRELL C. VALDEZ, D.C. Bar No. 420232
                                    Assistant United States Attorney
                                    Patrick Henry Building
                                    601 D Street, N.W., Civil Division
                                    Washington, D.C. 20530
                                    (202) 252-2507
                                    Darrell.Valdez@usdoj.gov

                                    *Counsel for Defendant*