## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LOUISE TRAUMA CENTER LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-3517 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 28, 31 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

This matter arises out of a series of FOIA requests Plaintiff Louise Trauma Center LLC (the "Center") made to the Department of Justice ("DOJ") in 2019 and 2020. *See generally* Compl., ECF No. 1. After the Center filed a six-count Complaint to enforce its requests in December 2020, *see* Compl., DOJ processed them and the parties began negotiations, *see* Joint Status Reports, ECF Nos. 10, 11, 12, 13, 15. Unable to reach agreement as to Counts 2 and 4, the parties filed cross motions for summary judgment in the summer of 2021. *See* Pl.'s 1d Mot. Summ. J., ECF No. 14; Def.'s 1d Cross-Mot. Summ. J., ECF No. 17. The Court denied Plaintiff's motion and granted DOJ's cross-motion only as to Count 4, leaving Count 2 unresolved. *See Louise Trauma Ctr. v. Dep't of Justice ("Louise Trauma I")*, No. 20-cv-3517, 2022 WL 278771, at *3–4, 10 (D.D.C. Jan. 30, 2022). Thereafter, DOJ conducted multiple reviews of the withheld material and made additional productions, while continuing to withhold certain material. *See* Def.'s Statement of Material Facts in Supp. Renewed Mot. Summ. J. ("Def.'s 2d SMF") at 3–5, ECF No. 28-1; Pl.'s Resp. Def.'s 2d SMF at 3–5, ECF No. 30-1. The

parties' renewed cross-motions on the still-withheld material are ripe for review.[1]  *See* Def.'s
Renewed Mot. Summ. J. ("Def.'s 2d MSJ"), ECF No. 28; Pl.'s Opp'n to Def.'s 2d MSJ and
Cross-Mot. for Summ. J. ("Pl.'s Opp'n and Cross-MSJ"), ECF No. 31.  For the reasons set forth
below, the Court grants in part and denies in part DOJ's motion, denies the Center's cross-
motion, and instructs DOJ to provide certain records to the Court for *in camera* review.

## I.  BACKGROUND

While the Court presumes familiarity with the factual and procedural background laid out
in *Louise Trauma I*, 2022 WL 278771, at *1–2, it briefly reiterates the most relevant facts before
summarizing the parties' more recent efforts to resolve this matter.  The FOIA request reflected
in Count 2 of the Complaint sought "all records . . . concerning Office of Immigration Litigation
training materials for lawyers in the appellate section."  *See* Ex. 2 to Compl., ECF No. 1-2;
Compl. ¶ 14.  The responding division of DOJ, the Office of Immigration Litigation-Appellate
Section ("OIL-App"), "located 4,364 responsive pages, of which the Civil Division released 172
pages in full, released 24 pages with redactions, and withheld 4,168 pages and 12 videos in full
pursuant to FOIA Exemptions 5 and 6."  *Louise Trauma I,* 2022 WL 278771, at *3.

In its first Motion for Summary Judgment, the Center did not contest that Exemption 6
was appropriately applied, so the Court focused on DOJ's justifications for invoking Exemption
5, *see id.* at *3 n.1., which protects documents that would be privileged in ordinary civil
litigation, *see Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.D.C. 2008).[2]  DOJ submitted a *Vaughn*

---

[1] While the Court considers Plaintiff's cross-reply, it notes that it was untimely, filed
nearly a week after the seven-day deadline imposed under Local Civil Rule 7(d).  *See* Pl.'s
Reply, ECF No. 34.

[2] Specifically, Exemption 5 shields from disclosure "inter-agency or intra-agency
memorandums or letters that would not be available by law to a party other than an agency in
litigation with the agency."  5 U.S.C. § 552(b)(5).

Index justifying its withholdings under Exemption 5 on grounds that the withheld material was subject to the attorney work product privilege, the deliberative process privilege, and/or the attorney-client privilege, but the Court found that the "information provided [was] insufficient to allow the Court to make a *de novo* determination about the appropriateness of the withholdings." *Louise Trauma I*, 2022 WL 278771, at *4.  Accordingly, the Court denied both parties' motions as to Count 2 and extended DOJ "another opportunity to meet its burden."  *Id.*

Subsequently, DOJ conducted multiple reviews of the withheld material, *see* Def.'s 2d SMF at 3–5; Pl.'s Resp. Def.'s 2d SMF at 3–5, ECF No. 30-1, and "determined that 1,922 pages should be released in full, 12 videos and 443 pages should be released in part, and 1,404 pages should be withheld in full."  Decl. Elizabeth A. Wood ("Wood Decl.") ¶ 7, ECF No. 28-2.[3]  As to the withheld material, DOJ continues to assert Exemption 5 through the attorney work product privilege, the deliberative process privilege, and/or the attorney-client privilege, as well as Exemption 6.  *Id.* ¶ 12–13.

## II.  LEGAL STANDARD

Congress enacted FOIA to permit citizens to discover "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 105 (1973) (Douglas, J., dissenting)).  After an agency "[conducts] a search reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), FOIA requires the agency to disclose responsive records revealed by the search, unless material in the records falls within one of

---

[3] DOJ also determined that "80 pages are not responsive to the FOIA request, 50 pages are duplicates, 142 pages were referred to the Justice Management Division, and 127 pages were referred to the Professional Responsibility Advisory Office."  Wood Decl. ¶ 7.  The Center does not challenge these determinations.

FOIA's nine statutory exemptions, 5 U.S.C. § 552(b). *See also Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975)). "The agency bears the burden of establishing that a claimed exemption applies," *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citing *Dep't of Just. v. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 755 (1989)), and exemptions are "given a narrow compass," *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Pinson v. Dep't of Justice*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Courts review agency withholdings *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). In general, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable factfinder to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). In a FOIA case, summary judgment is appropriate "if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People, Inc. v. Off. of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

The reviewing court may grant summary judgment based on the record and agency declarations if "the agency's supporting declarations and exhibits describe the requested documents and 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Pronin v. Fed. Bureau of Prisons*, No. 17-cv-1807, 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal citation omitted)).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Scudder v. Cent. Intel. Agency*, 254 F. Supp. 3d 135, 140 (D.D.C. 2017) (quoting *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013)).

## III.  ANALYSIS

The Center again does not contest the propriety of DOJ's limited withholdings pursuant to Exemption 6, *see* Pl.'s Opp'n and Cross-MSJ at 21, so the parties' cross-motions focus on the broader set of withholdings pursuant to Exemption 5.  Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The Supreme Court and the D.C. Circuit have construed Exemption 5 to exempt documents "normally privileged in the civil discovery context," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also Martin v. Off. of Special Couns.*, 819 F.2d 1181, 118 (D.C. Cir. 1987), including under the work product privilege, the deliberative process privilege, and the attorney-client privilege, *see Brown v. Dep't of State*, 317 F. Supp. 3d 370, 376 (D.D.C. 2018) (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008)).

Here, DOJ asserts the work product privilege over the vast majority of the withheld material.  It asserts the attorney-client privilege concurrently over a PowerPoint presentation titled, "Professional Responsibility Advisory Office Training Powerpoint" and independently over four other sets of withholdings.  *See Vaughn* Index at 8, 17, 33, 50–51, ECF No. 29-1.  It also asserts the deliberative process privilege over a significant number of records, but states that this is "secondary to the concurrently-applied Attorney Work-Product Doctrine and the Attorney-Client Communication Privilege, which cover the same records."  Def.'s Opp'n and Reply at 1, ECF No. 32.  Accordingly, with one exception identified below,[4] the Court only considers the deliberative process privilege in connection with a single withholding for which DOJ failed to adequately justify other concurrently asserted privileges.

### A.  Attorney Work Product Privilege

The attorney work product privilege "shields materials 'prepared in anticipation of litigation or for trial by or for [a] party or by or for that ... party's representative.'"  *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) (quoting Fed. R. Civ. P. 26(b)(3)).  "The work product privilege enables . . . lawyer[s] to develop [their] mental impressions and legal theories without fear of having [their] adversaries rummage through them at leisure."  *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 126 (D.C. Cir. 1987) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).  Work product is protected if "disclosure . . . risks revealing DOJ's litigation strategies and legal theories regardless of whether it was prepared with a specific claim in mind."  *Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for U.S. Att'ys*, 844 F.3d

---

[4] Contrary to Defendant's statement that it only asserted the work product privilege over withholdings also covered by another privilege, in fact it seemingly inadvertently asserted the deliberative process privilege alone over redactions applied to a single page. *See Vaughn* Index at 32. This page is discussed *infra* Section III.C.

246, 254 (D.C. Cir. 2016).  That is, while "'neutral' accounts of government policy" that merely "pertain to the subject of litigation in the abstract" may not be privileged, any materials that "impart[] litigation strategy to government lawyers" by "addres[ing] how attorneys on one side of an adversarial dispute . . . should conduct litigation" are privileged work product.  *Id.* at 254–56.  This includes materials that "describe[] how to respond to the other side's arguments, which cases to cite, and what material to turn over and when to do so," or explain "the types of claims defense counsel have raised," "tactics they could employ in litigation," and "arguments prosecutors can make to respond."  *Id.* 255 (internal citation omitted).

The Center's motion cites to no case law beyond *Louise Trauma I* to identify the contours of the work product privilege or illuminate how it should apply to the records under review here, which almost entirely consist of OIL-App training presentations for new attorneys.  *See* Pl.'s Opp'n and Cross-MSJ at 9–20; Def.'s Opp'n and Reply at 2 ("Plaintiff fails to cite any caselaw in support of its arguments regarding the application of the Attorney Work-Product Doctrine and the Attorney-Client Communication Privilege . . . .").[5]  Instead, the Center makes two related semantic arguments as to why "many" of the justifications for invoking the privilege contained in DOJ's *Vaughn* Index are insufficient.  *See* Pl.'s Opp'n and Cross-MSJ at 9-12.  First, the Center argues that "[m]aterials that state the instructor's 'viewpoint' are not protected" because "[a]ll instructors have 'viewpoints."  *Id.* at 11.  It argues that because DOJ lawyers "do not try to 'win' cases" and instead "try to achieve justice," "[if] justice is done, they 'win'," so their "viewpoints should be disclosed."  *Id.*  Setting aside the Center's misconception of the

---

[5] The Center's motion appears to seek summary judgment only as to some of the records over which DOJ asserted the work product privilege.  *See* Pl.'s Opp'n and Cross-MSJ at 9 (section heading reading, "Some of the Materials Are Not Protected by the Attorney Work Product Doctrine").  Nonetheless, for purposes of evaluating DOJ's motion, the Court reviews each claim to exemption *de novo*.  *See* 5 U.S.C. § 552(a)(4)(B).

adversarial nature of the U.S. court system, *see Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."), and the central function of the work product privilege to "protect 'the integrity of the adversary trial process itself,'" *see Nat'l Ass'n*, 844 F.3d at 251 (citation omitted), a rule that government attorneys' viewpoints are not protected work product would swallow the privilege whole. It is the basic purpose of the privilege to protect attorneys' "mental impressions" in relation to foreseeable litigation. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impression of an attorney.").

Second, the Center argues by extension that "[m]aterials that state an instructor's "analysis,' 'view,' or 'thoughts,' are not protected" because "[t]here is no real difference between viewpoints, views, analysis, or thoughts." Pl.'s Opp'n and Cross-MSJ at 12. Whatever the merits of the Center's thesaural comparisons, as explained above, attorneys' "mental impressions, conclusions, opinions, or theories" are the core of what is protected by the work product privilege. *United States v. Deloitte*, 610 F.3d 129, 138 (D.C. Cir. 2010) (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)). Far from stripping otherwise deserving records of work product protection, the appearance of the Center's selected words in the *Vaughn* Index generally bolsters DOJ's claim to the privilege.

Still, it is DOJ, not the Center, that must justify its assertions of the work product privilege. The Court finds that DOJ has carried its burden through its proffered justifications in the *Vaughn* Index as to all such assertions except the narrow group identified below. The vast majority of these records are training materials discussing arguments or strategies that DOJ

attorneys should adopt or consider in particular situations that may arise in the course of litigating matters under their purview.  *See, e.g.*, *Vaughn* Index at 12 (one page redacted in presentation titled, "Government Role Element in Persecution" because it discusses "litigation strategy and arguments to use during briefing of cases for litigation related to persecution"); *id.* at 15 (one page withheld from presentation titled, "National Security and Human Rights Removal Grounds and Bars to Relief and Protection" because it discusses "viewpoints on issues that can bar relief and protection in a litigation and how to argue those points"); *id.* at 41 (six pages redacted and one page withheld from presentation titled, "Asylum & Withholding of Removal: Exploring the Legal Elements & Credibility and Corroboration" because they discuss the "attorney's viewpoints on how to construct severity of harm arguments and the issues that might present themselves with these arguments.").  These fall squarely within the category of privileged documents that "address[] how attorneys on one side of an adversarial dispute . . . should conduct litigation."  *Nat'l Ass'n*, 844 F.3d at 255.

A small number of records arguably contain "neutral" legal analysis that is disconnected from "litigation strategy."  *Id.* at 256.  However, even if material has a "seeming air of neutrality if considered in strict isolation," where disclosure would "tend to reveal the lawyer's thoughts about which authorities are important and for which purposes," it "squarely implicates the work-product privilege."  *Id.*  The latter description captures most of the material withheld here that arguably contains neutral legal analysis.  As a representative example, one entry in the *Vaughn Index* explains that a 29-page withholding contains discussion of "how specific courts and judges view" certain legal arguments.  *See Vaughn* Index at 3–4 (entry at bottom of page three titled, "WIF Pages 24–52").  But this discussion is of a piece with the "attorney's analysis and viewpoints on advanced topics and issues related to PSGs [particular social groups] and how to

handle those topics and issues when they are presented in future litigations" and "which arguments are the strongest and what to avoid." *Id.* Similarly, another entry explains that a 17-page withholding of a section of a presentation on "Circuit Splits" concerning the "Convention Against Torture" discusses "how various circuit courts handle different arguments," but only in the context of evaluating "which arguments are the strongest for the government in litigating CAT cases." *Id.* at 7 (entry in second row titled, "WIF Pages 41–57"). Apart from the four exceptions detailed below, the Court finds that DOJ's explanations adequately demonstrate that the withheld material would reveal DOJ's litigation strategy and therefore is protected work product. *See Nat'l Ass'n*, 844 F.3d at 256.

In addition, the Court is satisfied that DOJ reasonably segregated privileged material from non-exempt material, particularly given that "factual material is itself privileged when it appears within documents that are attorney work product." *Jud. Watch v. Dep't of Just.*, 432 F.3d 366, 371 (D.C. Cir. 2005); *see* Wood Decl. ¶ 10 (explaining that DOJ released training session agenda documents and two published court opinions, but determined that the "other training materials contain[] attorney/instructor professional interpretation of statutes and court opinions, and perceived weaknesses or strengths in present and future legal arguments and analysis and could not be reasonably segregated"); Def.'s 2d MSJ at 10 ("[T]he very purpose of these further proceedings is for [DOJ] to make a re-review of the responsive documents and carefully cull through the training material in order to segregate and produce material that contained purely [non-exempt material].").[6] As a representative example, one entry in the *Vaughn* Index shows seven separate explanations, each adequate to establish work product protection, for redactions and withholdings applied to discrete page ranges in an 84-page

---

[6] The Center does not argue that DOJ failed to reasonably segregate non-exempt material.

presentation.  *See Vaughn* Index at 12–13 (entry starting in last row of page 12 for presentation titled, "Hot Topics in Criminal Immigration Litigation").  Finally, the Court is also satisfied that DOJ, through the declarations of Elizabeth A. Wood, the Acting Director of the Freedom of Information Act and Privacy Office of the Civil Division of DOJ, has demonstrated that it "reasonably foresees that disclosure would harm an interest protected" by Exemption 5. 5 U.S.C. § 552(a)(8)(A)(i)(I); *see* Wood Suppl. Decl. ¶ 5, ECF No. 33-2 (explaining, in a supplemental declaration devoted almost exclusively to showing reasonably foreseeable harm, that disclosure of protected work product would "inhibit government attorneys from creating records necessary for the performance of their duties . . . for fear that their mental impressions and other work product may be disclosed to the public at large" and would "give opposing counsel insight into the suggested tactics and arguments that would allow opposing counsel to anticipate and prepare counterarguments in advance").[7]

However, the Court identifies four minor exceptions to its general finding that DOJ has adequately justified its withholdings pursuant to the work product privilege.[8]  First, DOJ redacted five points from a slide titled, "And Yet More" from a presentation titled, "Federal

---

[7] Contrary to the Center's argument that Ms. Wood "does not claim to have any personal knowledge" sufficient to assert foreseeable harm on behalf of DOJ, *see* Pl.'s Reply at 8, Ms. Wood in fact explains that she "oversee[s] the unit responsible for responding to FOIA requests made to the Civil Division" and submits her declaration "based on [her] own knowledge and those working under [her] supervision and control."  Wood Decl. ¶¶ 2–3; *see Ecological Rts. Found. v. U.S. Env't Prot. Agency*, 541 F. Supp. 3d 34, 48 (D.D.C. 2021) ("[A]n agency employee, whose duties involve the processing of FOIA requests, may provide sworn declarations concerning an agency's search for and production of records responsive to a FOIA request."); *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (explaining that declarants must have "personal knowledge of the procedures used in handling a FOIA request" and the "documents in question" but "are not required to participate in the search for records" (formatting omitted)).

[8] The work product privilege was the only privilege asserted as to the withholdings discussed in this paragraph.

Power Over Immigration" on grounds that they contain "analysis of the developments in
immigration law and the attorney's thoughts on those developments." *Vaughn* Index at 11 (entry
in third row titled, "RIP Page 13").  Second, DOJ redacted a bullet point in a slide concerning
"Metering" in a presentation titled, "New Asylum Regulations & Policies that Impact OIL's
Litigation" on grounds that it "addresses how the policy/practice is showing up in briefings in
these litigations." *Vaughn* Index at 24 (entry in first row titled, "RIP Page 5").  Third, DOJ
redacted a page concerning "Certification in OIL Cases" in a PowerPoint combining
presentations titled, "Hot Topics in Criminal Immigration Litigation" and "Serious Nonpolitical
Crime Bar and Interpol Red Notices" on grounds that the redacted material discusses "two points
on what OIL can and cannot do in state certification cases." *Id.* at 24 (entry in second row titled,
"RIP Page 61").  Fourth, DOJ redacted a page of another presentation concerning "Statutory
Construction Approach" in a presentation titled, "Actual and Imputed Political Opinion-
Overview" on grounds that it contains the "presenter's viewpoints on how to approach the
question and where to start." *Id.* at 32–33 (entry in first row of page 33 titled, "RIP Page 13").
While these proffered justifications provide some basis to infer that the material consists of
protected work product, more is needed to permit *de novo* determination of where these
withholdings fall on the spectrum from "neutral, objective analysis" to "more pointed documents
that recommend how to proceed" in conducting or preparing for litigation.  *Am. Immigr. Council
v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 221–22 (D.D.C. 2012) (internal quotations
omitted).

   Accordingly, DOJ is instructed to either release this withheld material to the Center or
else provide it to the Court for *in camera* review.  Outside of these four exceptions, and one

further withholding separately analyzed below,[9] the Court finds that DOJ has sufficiently

justified all of its withholdings pursuant to the work product privilege under Exemption 5.

### B. Attorney-Client Privilege

"The attorney-client privilege protects confidential communications from clients to their

attorneys made for the purpose of securing legal advice or services." *Tax Analyst v. IRS*, 117

F.3d 607, 618 (D.C. Cir. 1997) (citing *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)).

While the privilege, "at its core, protects communications from a client to an attorney," *Zander v.*

*Dep't of Just.*, 885 F. Supp. 2d 1, 16 (D.D.C. 2012) (citing *Fisher v. United States*, 425 U.S. 391,

403 (1976)), it also protects communications from an attorney to a client "if the communications

'rest on confidential information obtained from the client,'" *Tax Analyst*, 117 F.3d at 618

(quoting *In re Sealed Case*, 737 F.2d at 98–99); *see also Schlefer v. U.S.*, 702 F.2d 233, 245

(D.C. Cir. 1983) ("The attorney-client privilege in federal courts protects communications from

attorney to client to avoid the risk of inadvertent, indirect disclosure of the client's

confidences."). "In the governmental context, the 'client' may be the agency and the attorney

may be an agency lawyer." *Tax Analyst*, 117 F.3d at 618. "A court may infer confidentiality

when the communications suggest that 'the Government is dealing with its attorneys as would

any private party seeking advice to protect personal interests.'" *Heartland All. for Hum. Needs*

*& Hum. Rts. v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 122–23 (D.D.C. 2019)

(quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)).

---

[9] This is a 127-page presentation titled, "Professional Responsibility Advisory Office Training PowerPoint" that DOJ withheld in full based on the attorney-client privilege, the deliberative process privilege, and the work product privilege. *See Vaughn* Index at 50–51. The Court analyzes this presentation *infra* Section III.B.1.

DOJ asserts the attorney-client privilege over five sets of withholdings in the *Vaughn* Index.  Its justifications for these assertions all suffer from the same infirmity.  The first assertion pertains to redactions applied to two pages in a presentation titled, "Crimmigration," and the second pertains to two pages withheld in full from the same presentation.  *See Vaughn* Index at 8.  Regarding the redactions, DOJ explains that they were applied to a "final point in slide discussing probability of success in including specific statute arguments in criminal immigration cases."  *Id.* (first entry in the last row titled, "RIP Page 8, 32").  This is insufficient.  First, the *Vaughn* Index refers to redactions only to a singular "final point" in a presentation slide, but simultaneously indicates that the redactions were applied to two pages of records without explaining the apparent inconsistency.  *Id.*  Second, the explanation does not indicate that the communication from the presenter, who is in the role of the attorney, "rests on confidential information obtained from the client."  *Tax Analyst*, 117 F.3d at 618.  The same problem applies to the two pages withheld in full, which DOJ explains contain "guidance on how to argue specific elements and the perceived differences in those elements, and the possible documents needed to support the arguments."  *Vaughn* Index at 8 (second entry in last row titled, "WIF Page 9, 33").  More is required to show that the withheld material was based on confidential information provided by the client.  *See In re Sealed Case*, 737 F.2d at 99 ("[T]he claimant must demonstrate with reasonable certainty that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." (citations omitted)); *compare Bloche v. Dep't of Def.*, 279 F. Supp. 3d 68, 86 (D.D.C. 2017) ("Since these slides [from a PowerPoint presentation titled, "Review of Detainee Abuse Reports"] are a communication from an attorney to his client, they are privileged only insofar as they rest on confidential information obtained from the client.  Defendant, in its declaration, offers no explanation as to what confidential client

communication underlies these slides.") *with New York Times Co. v. U.S. Dep't of Just.*, 282 F. Supp. 3d 234, 238 (D.D.C. 2017) ("This is a quintessential example of the sort of document that falls within the attorney-client privilege: advice from an attorney (the head of OLC) to his client (the Attorney General and, subsequently, the NSA) concerning the legal aspects of the client's contemplated actions and based on confidential information from the client concerning those contemplated actions.").

It is tempting to infer that DOJ unintentionally asserted the attorney-client privilege as to these entries when in fact it meant to assert the work product privilege, given that its explanations more naturally fit within the latter doctrine. But DOJ failed to correct this possible error even in response to the Center's direct challenge to the two withheld pages. *See* Pl.'s Reply at 13, ECF No. 34 (arguing that the attorney client privilege does not apply to the two withheld pages because the explanation "does not identify client" or "claim that a client 'confidentially communicated facts.'"). Accordingly, DOJ is instructed to either produce the withheld material to the Center or else provide the presentation to the Court for *in camera* review, together with supplemental explanation of the privilege asserted in a further revised *Vaughn* Index.

The third assertion of the attorney-client privilege pertains to redactions applied to 16 pages in a presentation titled, "Professional Responsibility in Immigration Litigation." *See Vaughn* Index at 17. And the fourth assertion pertains to redactions applied to 12 pages in a presentation titled, "Professional Responsibility Issues – OIL Litigation Part II." *See id.* at 33. DOJ justifies both sets of redactions on grounds that "the redacted material provides legal advice to DOJ attorneys in complying with their professional responsibility obligations." *Id.* at 17, 33. Here, too, DOJ has failed to provide any indication that the communication "rests on confidential information obtained from the clients." *Tax Analyst*, 117 F.3d at 618. DOJ claims that "[a]dvice

from a mentor or a training attorney about how to comply with legal duties is exactly the sort of communication 'for the purpose of obtaining or providing legal advice' protected by the attorney-client privilege." *See* Def.'s Opp'n and Reply at 7 (citing *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014)).  DOJ cites *In re Kellogg* for this proposition, but that case involved a much different situation in which a corporation asserted the privilege over documents created pursuant to an internal investigation that the corporation claimed was "conducted for the purpose of obtaining legal advice." *In re Kellogg*, 756 F.3d at 756.  But the records at issue here were not created for the purpose of *obtaining* legal advice, but rather for the purpose of *providing* it.  In this situation, where the attorneys' communication to the client is at issue, that communication must be "based, in part at least, upon a confidential communication to the lawyer from the client." *In re Sealed Case*, 737 F.2d at 99 (cleaned up).  This makes sense, as the purpose of the privilege is not broadly to promote public understanding of the law, but more narrowly "to encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citations omitted); *see also Schlefer*, 702 F.2d at 245 ("The attorney-client privilege in federal courts protects communications from attorney to client to avoid the risk of inadvertent, indirect disclosure of the client's confidences.").[10]  Here, because

_____

[10] DOJ also cites *Nat'l Sec. Couns. v. CIA*, 206 F. Supp. 3d 241, 286 (D.D.C 2016), in which the court found that portions of CIA training materials were exempt from disclosure under FOIA based on the attorney-client privilege.  However, the training materials were prepared to assist "CIA employees responsible for processing FOIA requests for agency records," not government lawyers. *Id.*  As such, the attorney-client communications at issue were not between the presenter and the trainees, but rather consisted of legal advice from CIA attorneys, presumably generated at a different time and for a separate purpose, that happened to be "directly quoted and/or summarized" the training materials. *Id.*  It makes sense, then, that the Court only directly considered whether the communications at issue were maintained confidentially after they were originally made. *Id.* (explaining that "while the agency's description of the genesis of these documents . . . is somewhat vague," the plaintiff "provides no basis upon which to conclude that these materials were shared with agency employees who were not responsible for carrying out the record processing tasks described therein").  By contrast, here, DOJ asserts the

DOJ failed to make the necessary showing that the redacted material in the two presentations identified above was based on confidential information provided by the client—in this situation, the agency lawyers—DOJ must either produce the withheld material to the Center or else provide the presentations to the Court for *in camera* review, together with supplemental explanation of whether the redacted material was based on confidential information obtained from the client in a further revised *Vaughn* Index.

### 1. PRAO PowerPoint

The fifth and final assertion of the attorney-client privilege pertains to DOJ's withholding in full of a 127-page presentation titled, "Professional Responsibility Advisory Office Training PowerPoint" used to train "DOJ attorneys on how to recognize and analyze professional responsibility issues that may arise." *See Vaughn* Index at 50–51.  The *Vaughn* Index asserts three bases for exemption.  It first asserts the attorney-client privilege on grounds that "PRAO is ethics counsel to DOJ attorneys and the redacted material provides legal advice in complying with the DOJ attorneys' professional responsibility obligations."  *Id.* at 51.  But again, this explanation fails to establish that this communication from attorney to client was based on confidential information obtained from the client.  *See Tax Analyst*, 117 F.3d at 618.

---

privilege directly over attorney-client communications between the presenter, in the role of attorney, and the DOJ lawyer trainees, in the role of clients, embodied in the training presentation itself.  *See* Def.'s Opp'n and Reply at 9 ("Because these training courses contain legal advice from the experienced attorney to the trainees on how to respond to potential legal situations and or [*sic*] arguments, they are protected under the Attorney-Client Communication Privilege . . . ." (citation omitted)).  This puts the question of whether those communications were based on confidential information obtained from the clients directly in issue.  *See Bloche v. Dep't of Def.*, 279 F. Supp. 3d 68, 86 (D.D.C. 2017) ("Since these slides [from a PowerPoint presentation titled, "Review of Detainee Abuse Reports"] are a communication from an attorney to his client, they are privileged only insofar as they rest on confidential information obtained from the client.").

DOJ also asserts the deliberative process privilege and the work product privilege over this PowerPoint. *Vaughn* Index at 50–51. It asserts the deliberative process privilege on grounds that "the redacted material reflects tentative recommendations on which agency decisionmakers are free to change their minds." *Id.* The deliberative process privilege protects documents that are both predecisional and deliberative. *See Louise Trauma I*, 2022 WL 278771, *7. As the Court explained concerning the "predecisional" prong in *Louise Trauma I*, "[i]t is not enough to assert in a conclusory manner that the training material was predecisional," as the "'court must be able to pinpoint an agency decision or policy to which the document contributed' as well as 'establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Id.* at *8 (quoting *Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (cleaned up)). Concerning the "deliberative" prong, the Court explained that the "deliberative process privilege does not usually extend to training materials because 'training is not a step in making a decision; it is a way to disseminate a decision already made.'" *Id.* (quoting *Am. Immgr. Council*, 905 F. Supp. 2d at 218). And regardless, the withheld record itself must "reflect[] the give-and-take of the consultative process." *Id.* (quoting *100Reporters LLC v. U.S. Dep't of Just.*, 284 F. Supp. 3d 115, 153 (D.D.C. 2017)). DOJ's spare explanation falls far short of making this showing.

Last, DOJ asserts the work product privilege on grounds that "the redacted material conveys advice, strategies, and legal authorities on which DOJ attorneys can rely in anticipation of potential litigation if their conduct is challenged in a case or investigation, or becomes the subject of a bar authority's inquiry, investigation, or complaint." *Vaughn* Index at 51. But the *Vaughn* Index states that material was "redacted" from this presentation pursuant to the work

product privilege (and deliberative process privilege), which is inconsistent with its separate indication that all 127 pages of the presentation were withheld in full.  *See Vaughn* Index at 50–51.  This ambiguity precludes a finding that the entire record is "fully protected."  *Nat'l Ass'n*, 844 F.3d at 256-57 (explaining the expectation, with respect to "voluminous or lengthy work-product records" that appear to contain "segregable, non-exempt material subject to disclosure," that courts will "require the agency to provide a description of which parts of the withheld documents are nonexempt and either disclose them or offer adequate justification for continuing to withhold them" (cleaned up)).  Accordingly**,** DOJ is instructed to provide an unredacted version of this PowerPoint to the Court for *in camera* review, together with supplemental justification for its privilege assertions in a further revised *Vaughn* Index.

## C.  Deliberative Process Privilege

DOJ states that its assertions of the deliberative process privilege are "subsumed and overwhelmed by the concurrently-applied Attorney-Work Product Doctrine and the Attorney-Client Communication Privilege" and therefore that the Court should treat argument concerning the deliberative process privilege as "superfluous."  Def.'s Opp'n and Reply at 1, 10; *see* Wood Suppl. Decl. ¶ 6 ("While the attorney work-product doctrine and attorney-client communication privilege cover all material withheld or redacted, deliberative process is raised as a supplemental protection under Exemption 5 . . . .").  However, the *Vaughn* Index indicates that one page was redacted solely based on the deliberative process privilege.  *See Vaughn* Index at 32 (entry in first row titled, "RIP Page 41").  Specifically, in a presentation titled, "Particular Social Group Claims: Litigating in a Post-A-B and Post-L-E-A-II World," DOJ redacted a slide titled, "Internal Direction" on grounds that it contains "internal direction for handling these cases within OIL."  *Id.*  This falls short of the requisite showing, laid out in detail above, that the

withheld material is both predecisional and deliberative.  *See Louise Trauma I*, 2022 WL 278771, *7.  In light of the apparent confusion with respect to this entry, DOJ is instructed to release the withheld material to the Center or else provide the presentation containing this record to the Court for *in camera* review, together with supplemental explanation of the privilege asserted in a further revised *Vaughn* Index.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that DOJ's Motion for Summary Judgment, ECF No. 28, is **GRANTED IN PART AND DENIED IN PART** and the Center's Cross-Motion for Summary Judgment, ECF No. 31, is **DENIED**.  It is **FURTHER ORDERED** that, within 30 days, DOJ shall provide the following records to the Court for *in camera* review, consistent with this Opinion:

- Presentation titled "Federal Power Over Immigration."  *See Vaughn* Index at 11 (to be reviewed in connection with entry in third row titled, "RIP Page 13").

- Presentation titled "New Asylum Regulations & Policies that Impact OIL's Litigation."  *See Vaughn* Index at 24 (to be reviewed in connection with entry in first row titled, "RIP Page 5").

- Combined presentations titled, "Hot Topics in Criminal Immigration Litigation" and "Serious Nonpolitical Crime Bar and Interpol Red Notices."  *Vaughn* Index at 24 (to be reviewed in connection with entry in second row titled, "RIP Page 61").

- Presentation titled, "Actual and Imputed Political Opinion-Overview."  *Vaughn* Index at 32–33 (to be reviewed in connection with entry in first row of page 33 titled, "RIP Page 13").

- Presentation titled, "Crimmigration."  *Vaughn* Index at 8 (to be reviewed in connection with both entries in last row).

- Presentation titled, "Professional Responsibility in Immigration Litigation."  *Vaughn* Index at 17 (to be reviewed in connection with first entry in second row titled, "RIP pages 9, 17, 20, 24, 27, 29, 30, 32, 35, 38, 41, 42, 46, 48, 51, and 55").

- Presentation titled "Professional Responsibility Issues – OIL Litigation Part II." *Vaughn* Index at 33 (to be reviewed in connection with first entry in second row titled, "RIP Pages 5, 11, 18, 26, 28, 31, 32, 36, 42, 45, 49, and 53").

- Presentation titled, "Professional Responsibility Advisory Office Training PowerPoint." *Vaughn* Index at 50–51 (to be reviewed in connection with entry starting in last row of page 50 titled, "WIF all 127 Pages").

- Presentation titled, "Particular Social Group Claims: Litigating in a Post-A-B and Post-L-E-A-II World." *Vaughn* Index at 31–32 (to be reviewed in connection with second-to-last entry in first row of page 32 titled, "RIP Page 41").

A further revised *Vaughn* Index also may be submitted on the docket.  But given that the matters at issue have already been briefed twice, no further briefing is necessary from either party unless requested by the Court.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 28, 2023                                           RUDOLPH CONTRERAS
                                                                 United States District Judge