**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LOUISE TRAUMA CENTER LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-3517 (RC) |
| | : | | |
| v. | : | Re Document No.: | 43 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

## I. INTRODUCTION

Louise Trauma Center LLC (the "Center") sued to compel the United States Department of Justice (the "Department" or "DOJ") to produce records that the Department did not initially produce after the Center filed a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  After the Court denied the Center's motion for summary judgment and granted in part and denied in part the Department's cross-motion for summary judgment, the Center filed the present Motion for Attorney's Fees seeking: $98,647.00 in fees for the underlying litigation, $35,508.00 in fees for hours spent preparing the fees motion ("fees-on-fees"), and $402.00 in costs.  *See* Pl.'s Mot. Att'y's Fees, ECF No. 43 ("Pl.'s Fee Mot."); Pl.'s Reply Sup. Mot. Att'y's Fees, ECF No. 47 ("Pl.'s Fee Reply").  The Government has filed a brief in opposition to Plaintiff's fee motion, *see* Def.'s Opp'n Pl.'s Mot. Att'y's Fees, ECF No. 46 ("Def.'s Fee Opp'n") and Plaintiff has filed a reply in support of its motion, *see* Pl.'s Fee Reply.  For the reasons set forth below, this Court grants in part and denies in part the Center's motion for attorney's fees.

## II.  BACKGROUND

The Court presumes familiarity with the factual and procedural background described in *Louise Trauma Ctr. LLC v. Dep't of Just.* ("*Louise Trauma I*"), No. 20-3517, 2022 WL 278771 (D.D.C. Jan. 30, 2022), *Louise Trauma Ctr. LLC v. U.S. Dep't of Just.* ("*Louise Trauma II*"), No. 20-cv-3517, 2023 WL 2663007 (D.D.C. March 28, 2023), and *Louise Trauma Ctr. LLC v. U.S. Dep't of Just.* ("*Louise Trauma III*"), No. 20-cv-3517, 2023 WL 6646335 (D.D.C. Oct. 12, 2023) but briefly reviews the facts that are relevant to the Center's motion for attorney's fees.  The Center submitted a series of FOIA requests to the Department of Justice in 2019 and 2020 that formed the basis of this suit.  *See* Compl. ¶¶ 8, 15, 20, 25, 34, 42, ECF No. 1.  After the Center filed this suit in December 2020, the Department processed all six of the Center's FOIA requests, produced some documents and withheld others, and the parties conferred regarding outstanding disagreements over the scope of the Department's withholdings.  *See* Joint Status Reports, ECF Nos. 10, 11, 12, 13, 15.

Unable to resolve their remaining disagreements, the parties filed cross-motions for summary judgment.  *See* Pl.'s Mot. Summ. J. at 4, ECF No. 14; Def.'s Cross-Mot. Summ. J. ECF No. 17.  In its summary judgment briefing, the Center stated that it was dismissing its First, Third, Fifth, and Sixth causes of action.  *See* Pl.'s Mot. Summ. J. at 1.  Therefore, summary judgment focused on the documents that Plaintiff sought in the Second and Fourth causes of action in its complaint.  *See id.*  Ultimately, the Court granted in part and denied in part summary judgment for the Department and denied summary judgment for the Center.  *See generally Louise Trauma I*, 2022 WL 278771, at *12; *Louise Trauma III*, 2023 WL 6646335, at *7. Specifically, the Court ordered DOJ to produce some of the records that the Center sought in the Second cause of action of its complaint, but the Court held that the Department could withhold

records sought in the Fourth cause of action in the Center's complaint.  *See Louise Trauma I*, 2022 WL 278771, at *12; *Louise Trauma III*, 2023 WL 6646335, at *7.  Following the Court's decision on summary judgment, the Center filed the present motion for attorney's fees.  *See generally* Pl.'s Fee Mot.

### III.  LEGAL STANDARD

FOIA permits courts to assess "against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  To recover fees and costs, a plaintiff "must show that it is eligible for fees and that it is entitled to them."  *WP Co. LLC v. DHS*, No. 20-cv-1487, 2023 WL 1778196, at *1 (D.D.C. Feb. 6, 2023) (citing *Jud. Watch, Inc. v. DOC*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)).  If a plaintiff shows both eligibility and entitlement, the Court assesses whether the requested fee amount is reasonable.  *See id*. at *4.  It is the plaintiff's burden to show that its request fees are justified.  *See id*.

A party is "eligible" to receive attorney's fees if it has "substantially prevailed."  *Jud. Watch, Inc.*, 470 F.3d at 368–69.  To "substantially prevail," a party must obtain court-ordered relief on the merits of its FOIA claim, 5 U.S.C. § 552(a)(4)(E)(ii)(I), or cause the agency to make a "voluntary or unilateral change in . . . position . . . if the complainant's claim is not insubstantial," *id.* § 552(a)(4)(E)(ii)(II).  When determining whether a party is "entitled" to fees, the Court considers "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) (cleaned up).

As noted above, a plaintiff must also demonstrate that its fee request is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" to produce what is called the "lodestar" amount. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). With respect to the number of hours expended, the Court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Craig v. District of Columbia*, 197 F. Supp. 3d 268, 275 (D.D.C. 2016) (citation omitted). Along the same lines, if a plaintiff "achieved only partial or limited success," the Court may conclude that "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," and it may accordingly reduce the award. *See Hensley*, 461 U.S. at 436.

## IV.  ANALYSIS

The Center submits that its attorney spent 152.8 hours litigating this case but voluntarily reduces its hours by 20% to account for its limited success. *See* Pl.'s Fee Mot. at 20, 22. For the remaining 122 hours, the Center's attorney argues that he is entitled to the hourly rates set by the Fitzpatrick Matrix, for a fee total of $98,647.00.[1] *Id.* at 1. The Center also seeks $35,508.00 for fees-on-fees, and $402 in costs. *See* Pl.'s Fee Reply at 14. In response, the Department argues that (1) the Center is not entitled to fees because it has not substantially prevailed; (2) the Center is not eligible for fees for the claims on which it did not prevail; and (3) the Center's requested fees are unreasonable. *See generally* Def.'s Fee Opp'n. The Department contends that these considerations warrant a significant reduction or an outright denial of the Center's attorney's fees

---

[1] The Fitzpatrick Matrix is a chart published by DOJ that lists fee rates for attorneys according to their years of experience for use in complex civil cases in District of Columbia federal courts handled by the Civil Division of the United States Attorney's Office for the District of Columbia. *See* THE FITZPATRICK MATRIX, U.S. Atty's Office for the Dist. of Columbia, Civil Division (2024), https://www.justice.gov/usao-dc/media/1353286/dl?inline.

4

award. *Id*. at 1. As detailed below, the Court finds that the Center is entitled to and eligible for attorney's fees. However, the Center's proposed fees are unreasonably high, and the Court reduces the fee award to a sum that is reasonable and reflective of the level of the Center's success and time spent on successful litigation.

### A. Eligibility for Fees

The Court begins by assessing the Center's eligibility for attorney's fees. A party can "establish eligibility for fees by showing that it obtained relief either through (1) "a judicial order, or an enforceable written agreement or consent decree," 5 U.S.C. § 552(a)(4)(E)(ii)(I), or (2) by causing a "voluntary or unilateral change in the position by the agency, if the complainant's claim is not insubstantial." *id.* § 552(a)(4)(E)(ii)(II). The Center argues that it has substantially prevailed both because it caused the Department to change its policy and because it obtained a judicial order requiring the Department to produce certain documents. The Court addresses each of these arguments, starting with the Center's claim that it instigated the Department to change its position.

#### *1. Change in Position*

The Center argues that it substantially prevailed with respect to its First, Third, Fourth, Fifth, and Sixth causes of action because it caused the Department to change in position with respect to those causes of action. *See* Pl.'s Fee Mot. at 14. Under the "catalyst theory" that the Center relies on, a plaintiff "substantially prevails" when it "substantially cause[s] the government to release the requested documents before final judgment." *Harrington v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-2671, 2022 WL 17555428, at *3 (D.D.C. Dec. 9, 2022). "[T]he key question under the 'catalyst theory' is whether the 'institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of

the litigation[.]'" *Id.* (citation omitted). "That is, a FOIA plaintiff must prove that prosecution of the action could reasonably be regarded as necessary to obtain the information and that a causal nexus exists between the action and the agency's surrender of that information." *Id.* (quotation marks and citation omitted). But "something more than *post hoc, ergo propter hoc* must be shown." *Id.* (citation omitted). "If, rather than the threat of an adverse court order, an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in its suit." *Id.* (cleaned up).

Additionally, a plaintiff may show that it prevailed by demonstrating that an agency sped up its FOIA processing because of the plaintiff's suit. But while it is true that "sudden acceleration . . . might, in a given case, lead a court to conclude that . . . the filing of the lawsuit was the real reason for that acceleration," it is also true that "if the government's assertion for any delay is the slowness of the FOIA process despite its due diligence, disclosure after the lawsuit is filed, even if long delayed, will not in itself justify the award of fees." *Id.* at *5 (cleaned up). "To determine if extrinsic factors, rather than the plaintiff's lawsuit, caused the agency's release of documents," courts consider "(1) whether the agency made a good faith effort to search out material and pass on whether it should be disclosed; (2) whether the scope of request caused delay in disclosure; and (3) whether the agency was burdened with other duties that delayed its response." *Id.* (citation omitted).

Here, the parties came to an agreement early in this litigation which resolved their controversy with respect to the documents requested in the Center's First, Third, Fifth, and Sixth causes of action. *See* Joint Status Reports, ECF Nos. 10, 11, 12, 13, 15. And with respect to the documents relating to the Center's Fourth cause of action, the Court granted summary judgment

6

for the Department. *See Louise Trauma I*, 2022 WL 278771, at *12. The Center argues that its initiation of this suit against the Department caused the Department to turn over documents requested in the First, Third, Fifth, and Sixth causes of action, or else explain why it lacked those records. *See* Pl.'s Fee Reply at 8–9. The Center also argues that—even though the Court awarded summary judgment to the Department with respect to the documents in the Fourth cause of action—the Center's suit nonetheless spurred the Department to comply more fully with respect to the requested documents and speed up its processing. *See id.*

In response, the Department argues that the Center has not substantially prevailed with respect to its First, Third, Fourth, Fifth, and Sixth causes of action. *See* Fee Opp'n at 7, 9. The Department argues essentially that the Center's litigation did not cause it to change positions. *See id.* at 9. In support of its contention, DOJ submitted an affidavit averring that the agency started processing the Center's requests before the Center filed suit. *See* Decl. of Kenneth Hendricks ¶ 5; Def.'s Fee Opp'n, ECF No. 46-1 (stating that DOJ responded to parts of the Center's first request "just one day after the request was submitted . . . almost 7 months prior to the filing of the complaint"). The affidavit also explains that DOJ promptly acted on the Center's later-filed requests when it received them. *Id.* ¶¶ 7, 9–10. The affidavit, which must be "accorded a presumption of good faith" by this Court, *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), provides additional details about the specific steps that DOJ took in response to the Center's requests received prior to, as well as after, the Center filed its complaint, *see* Hendricks Decl. ¶¶ 5–10. The affidavit also explains that the Center filed "duplicate requests" with different units of DOJ, that the records it was required to process were extensive, and that DOJ received some of the Center's requests only after the Center filed suit. *See id.* ¶¶ 5–6. The affidavit further clarifies that the Department issued multiple responses informing

7

the Center of the status of its requests at various points in its processing. *Id.* ¶ 6, 10. In short, the affidavit provides evidence that the Department had already begun processing the Center's requests when the Center filed suit, that the center was doing so in good faith, and that the scope of the Center's requests was substantial.

The Court concludes that the Center has not proved its eligibility for attorney's fees with respect to the documents it sought in its First, Third, Fourth, Fifth, and Sixth causes of action. As explained above, the catalyst theory turns on whether a plaintiff's lawsuit "substantially caused" the agency to release documents. Although an agency's sudden acceleration in processing a FOIA request "may" lead to the conclusion that the Center caused a change in position by the agency, *id.*, the Center has failed to meet its burden to prove that the Department sped up its process or "that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *See Grand Canyon Tr. v. Bernhardt,* 947 F.3d 94, 97 (D.C. Cir. 2020) (citation omitted). Indeed, it is not clear that the Department ever sped up its processing of the Center's request or otherwise changed its policy. Accordingly, the Center cannot rely on a change in the Department's policy to prove it substantially prevailed and that it is eligible for attorney's fees.

*2. Judicial Order*

The Center also argues that it substantially prevailed because it obtained an order from the Court requiring the Department to produce some of the documents that the Center requested in the Second cause of action in its complaint. *See* Pl.'s Fee Mot. at 13–14; Pl.'s Fee Reply at 9. The Department "does not dispute that Plaintiff received some records concerning its Second claim due to the lawsuit." *See* Def.'s Fee Opp'n at 9. The Department contends, however, that just because the Center obtained a "relatively small number of additional records following

8

litigation," it does not mean that the Center has proven that it "substantially prevailed." *See id.* at 10.  Rather, the Department asserts that because the Center obtained so little relief, the Court should deny the Center's fee petition in its totality.  *Id.*

The Court concludes that the Center's limited success with respect to the documents it sought in its Second cause of action is sufficient to show that the Center has substantially prevailed in the litigation through a court order.  *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't. of Justice*, 820 F. Supp. 2d 39, 44 (D.D.C. 2011) (explaining that a plaintiff sufficiently shows that he has substantially prevailed if the "plaintiff has 'succeed[ed] on any significant issue in litigation, achieving some of the benefits the parties sought in bringing the suit'" (quoting *Edmonds v. FBI*, 417 F.3d 1319, 1326–27 (D.C. Cir. 2005))).  Although the Court ordered only a small number of documents to be produced, "FOIA cases routinely result in the disclosure of a relatively small proportion of the documents originally requested."  *See Jud. Watch, Inc. v. U.S. Dep't. of Justice,* 774 F. Supp. 2d 225, 233 (D.D.C. 2011).  Even if the Center received only a "relatively small" number of documents following the Court's order, Def.'s Fee Opp'n at 10, the Center has "obtain[ed] court-ordered relief on the merits of its FOIA claim."  *See Jud. Watch, Inc.*, 470 F.3d at 368–69.  The Court thus concludes that the Center has substantially prevailed in the litigation and is eligible for attorney's fees.

### B. Entitlement to Fees

The Center argues that it is also entitled to fees.  *See* Pl.'s Fee Mot. at 14–19.  With respect to its argument on entitlement, however, the Center appears to focus only on the documents it sought in the second cause of action in its complaint—on which it prevailed at summary judgment.  *See id.* at 15 ("Plaintiff requested documents concerning appellate training of agency lawyers"); Compl. ¶ 14, ECF No. 1 (explaining in Count Two that the Center

"requested 'all records concerning Office of Immigration Litigation training materials for lawyers in the appellate section'"). The Center urges the Court not to apply the four-factor test required by the Circuit for assessing entitlement to attorney's fees. *See id.* at 14–15. And the Center argues that even if the Court applies the four-factor test required by Circuit precedent, it is still entitled to fees. *See id.* at 15. The Department responds that the Center is not entitled to fees with respect to the Center's First, Third, Fourth, Fifth, and Sixth causes of action. *See* Def.'s Fee Opp'n at 11.

The Court is bound to apply the Circuit's precedent, which requires the use of a four-factor test, to determine whether the Center is entitled to fees. *See Kwoka v. Internal Revenue Serv.*, 989 F.3d 1058, 1063 (D.C. Cir. 2021) (explaining that the Circuit "has devised a four-factor test to guide district courts in determining whether a plaintiff is 'entitled' to fees"); *Davy v. C.I.A.*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (explaining that the Circuit "has directed the district court to consider" the four-factor test). That test "looks to (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Kwoka*, 989 F.3d at 1063 (citation omitted). "No one factor is dispositive," except that "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy*, 550 F.3d at 1159.

Here, the Center abandoned its First, Third, Fifth, and Sixth causes of action when it filed its motion for summary judgment. *See* Pl.'s Mot. Summ. J. at 4. Because the Center reached an agreement with the Department and forwent any additional claim with respect to those causes of action, the Department has not unlawfully "withheld" any documents sought by those causes of action. *See Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, No. 17-cv-2518, 2020

WL 4931932, at *2 (D.D.C. June 2, 2020) (explaining that "whether the 'withholding had a reasonable basis in law' . . . explicitly presupposes a 'withholding'"). Additionally, the Court held in favor of the Department with respect to the Center's Fourth cause of action. *See Louise Trauma I*, 2022 WL 278771, at *11. Because the Center focuses only on documents relating to its Second cause of action and because it either abandoned or lost with respect to its other claims, the Court concludes that the Department "has demonstrated that it had a lawful right to withhold disclosure" with respect to the documents in the Center's causes of action other than its Second cause of action. *See Davy*, 550 F.3d at 1159 ("If the Government's position is correct as a matter of law, that will be dispositive." (citation omitted)).

With respect to the Center's Second cause of action, the Department "does not dispute" that the Center "may be entitled to some fees for documents released in response to this Court's Orders." Def.'s Fee Opp'n at 12. Because the Department concedes that the Center is entitled to fees with respect to the records that the Center obtained by Court order, the Court need not discuss entitlement with respect to fees sought for the work to obtain those documents. *Jay v. D.C.*, 75 F. Supp. 3d 214, 218 (D.D.C. 2014). Accordingly, the Court turns to whether the Center's fee request is reasonable.

### C.  Reasonableness of Fees

Although the Center is eligible and entitled to receive attorney's fees, before the Court can award the Center fees, the Center must establish that its request is based on (1) a reasonable hourly rate for its attorney's services and (2) the number of hours reasonably expended on the litigation. *See Hensley*, 461 U.S. at 433. "Importantly, the plaintiff bears the burden of demonstrating that both the hourly rate and the number of hours expended on particular tasks are reasonable." *Jay*, 75 F. Supp. 3d at 218.

11

### 1. Reasonable Hourly Rate

To establish a reasonable hourly rate, a plaintiff must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Fee matrices "provide a useful starting point" for determining whether an attorney's rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill and experience. *Covington v. D.C.*, 57 F.3d 1101, 1109 (D.C. Cir. 1995).

The Center claims that the Fitzpatrick Matrix rate for an attorney who has been practicing law for over thirty-five years should be used here.[2] *See* Pl.'s Fee Mot. at 25; Pl.'s Fee Mot., Ex. D. "The Fitzpatrick Matrix itself, just like the LSI Laffey Matrix before it, is meant to capture the market rates for complex federal litigation in the District." *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 29–30 (D.D.C. 2023). Although "there is no presumption that FOIA cases qualify as complex federal litigation," *Webster v. U.S. Dep't of Justice*, 02-cv-603, 2021 WL 4243414, at *11 (D.D.C. Sept. 17, 2021), the Department concedes that the "[Fitzpatrick] matrix is the one applicable in circumstances like those here," Def.'s Fee Opp'n at 18 ("If this Court determines that Plaintiff . . . is eligible for and entitled to certain reasonable fees, the parties agree that those fees should be paid at Fitzpatrick Matrix rates."). Accordingly, the Court will apply the rates set by the Fitzpatrick Matrix.

---

[2] The Center's attorney seeks a blanket rate of $807 per hour for all his services from 2020-2023. *See* Pl.'s Fee Mot. at 25. The Center is entitled to $807 per hour only for the services he performed in 2023. As shown in the chart below, the Court applies the appropriate Fitzpatrick Matrix rate applicable to each year that the Center's attorney provided services.

### 2. Hours Reasonably Expended

Having determined the Center's attorney's hourly rate, the Court turns to the reasonableness of the Center's request for fees covering 122 hours of its attorney's time pursuing the underlying FOIA litigation, totaling $98,647.00. *See* Pl.'s Fee Mot. at 1. The Department argues that the Court should deny the Center's requested fees because (1) the fee amount is unreasonable considering the limited success of the Center's claims and (2) the Center's attorney showed "a lack of billing judgment" by recording nondescriptive time entries. Def.'s Fee Opp'n at 14–16. Addressing each argument in turn, the Court concludes that the Center can recover fees, but that a significant downward adjustment in the amount of fees is warranted.

#### *a. Reduction in Fees for Unsuccessful Claims*

The Department argues that the Center's fees should be reduced to exclude entries for claims on which the Center did not prevail. *See* Def.'s Fee Opp'n at 14. The Court has discretion to adjust a fee award to exclude time an attorney worked on unsuccessful claims. *See Hensley*, 461 U.S. at 434–36 (explaining that when a plaintiff prevails on only some of their claims, "a fee award based on the [total] claimed hours" would be "excessive"); *Merrick v. District of Columbia*, 316 F. Supp. 3d 498, 506–07 (D.D.C. 2018) (same); *Craig*, 197 F. Supp. 3d at 283 ("When reducing fees for limited degree of success, the Court may reduce fees in a number of ways, such as by eliminating specific hours or reducing the award as a whole."). When determining the amount by which to reduce a fee award for a partially successful plaintiff, a court must analyze the relationships between the plaintiff's successful and unsuccessful claims. *See Hensley*, 461 U.S. at 434–35. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

The Department makes two arguments for why the Center's fee award should be denied for lack of success. First, the Department argues that the Center was not successful on its First, Third, Fourth, Fifth, and Sixth causes of action and any fee award for those claims would be unreasonable. *See* Def.'s Fee Opp'n at 14. Second, the Department argues that even with respect to the Center's Second cause of action—pursuant to which it received some documents after summary judgment briefing—the Center's arguments were so deficient that awarding the Center fees for that cause of action would be unreasonable. *Id.* at 14–15 ("Plaintiff's legal arguments in its motions for summary judgment addressing the Second Cause of Action were so inadequate that this Court was required to expend its own time and resources to parse Plaintiff's filings to discern what, if anything, Plaintiff possibly could be arguing as the basis for its claim of an improper withholding.").

Taking the Department's second argument first, the Court does not consider the Center's legal arguments so devoid of substance as to warrant an outright denial of its fee award. Although the Court will not compensate "duplicative, unorganized, or otherwise unproductive effort," *Envt'l Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quoting *Jordan v. U.S. Dep't. of Justice*, 691 F.2d 514, 518 (D.C. Cir. 1982)), the Center's efforts were productive enough for the Court to rule in part against the Department, *see Louise Trauma I*, 2022 WL 278771, at *12 (denying in part DOJ's cross-motion for summary judgment). The Court notes, however, that the Center was successful with respect to only *some* of the documents sought in the Center's Second cause of action. *See Louise Trauma III*, 2023 WL 6646335, at *7. Accordingly, the Court concludes that hours spent on, and identifiable to, the Center's success in obtaining some of the documents it sought in its Second cause of action are reasonable. That said, the Court agrees with the Department that awarding the Center fees for its efforts on

*unsuccessful* claims would be unreasonable. *See* Def.'s Fee Opp'n at 14. Thus, the Court deducts hours attributable to unsuccessful claims from the Center's fee award. *See Craig*, 197 F. Supp. 3d at 283.

As explained in greater detail below, the Center's attorney's fee hours log lacks detail and is difficult to parse. *See generally* Pl.'s Fee Mot., Ex. C. The fee hours log attached to the Center's motion is a long document that appears to have been created in a word processing application. *See id.* It is ordered by date, with time entries listed below each date, and descriptions associated with the time entries. *See id.* To put it mildly, the descriptions associated with the various time entries provide little to no detail. Despite the lack of clarity, the Court can identify several entries attributable to unsuccessful claims and motions. For instance, the Center's attorney logged 2.6 hours "Improving and Editing," and 1.5 hours "Re-evaluati[ng]" its First, Third, Fourth, Fifth, and Sixth causes.[3] *Id*. at 1, 3–4. The Center also spent at least 8.2 hours working on its unsuccessful motion for summary judgment.[4] *Id.* at 4–5; *see also Louise Trauma I*, 2022 WL 278771, at *12 (denying Plaintiff's motion for summary judgment). Collectively, the Center worked on unsuccessful claims and motions for at least 12.3 hours, and the Court deducts these hours from its fee award. That said, given the lack of detail in the fee hours log, it appears likely that additional hours were spent on unsuccessful claims even if the

---

[3] The Court reaches these numbers by adding ".9 #1"; ".4 #3"; ".7 #4"; ".3 #5"; ".3 #6," equaling 2.6 hours, and adding ".3 1st cause of action"; ".4 3rd cause of action" (*sic*); ".6 5th cause of action"; ".2 6th cause of action," equaling 1.5 hours. *See* Pl.'s Fee Mot., Ex. C at 1, 3–4.

[4] The Court reaches this number by adding "1.4 Drafting MSJ: DLC Declaration #14"; "1.0 preparing outline of Motion for SJ"; "1.9 preparing Intro and Tables and Exhibits"; "1.2 Writing argument I of SJ (appellate materials)"; ".5 Writing Part II (bad search)"; "1.1 re-writing Motion & proof reading"; "1.1 rewriting arguments," equaling 8.2 hours. *See* Fee Mot. Ex., C at 4–5.

Court cannot identify additional misspent hours. That brings the Court to the Department's next argument.

### *b. Reduction in Fees for Lack of Billing Judgment*

The Department argues that the Center's fee award should be further reduced because its attorney exercised poor billing practices and produced deficient billing records. *See* Def.'s Fee Opp'n at 15. To support a reasonable fee request, a plaintiff's "supporting documentation must be of sufficient detail and probative value to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (cleaned up). Satisfactory documentation consists of "contemporaneous time records of hours worked . . . plus a detailed description of the subject matter of the work with supporting documents, if any." *Ashraf-Hassan v. Embassy of France in the U. S.*, 189 F. Supp. 3d 48, 58 (D.D.C. 2016) (quoting *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. A fixed, percentage reduction may be warranted when a large number of billing entries suffer from one or more deficiencies. *See Role Models Am.*, 353 F.3d at 973. The Department argues that a substantial number of the Center's attorney's time entries are so lacking in necessary descriptive detail that fees for those time entries should be precluded. *See* Def.'s Fee Opp'n at 15. The Court agrees and accordingly reduces the Center's fee award by 40%.

To start, the Center's attorney's fee hours log simply does not describe the attorney's tasks with enough detail to assess the reasonableness of the hours worked. Its descriptions are brief and provide only surface-level explanations of the work done for any given entry. *See generally* Pl.'s Fee Mot., Ex. C. The following are a limited sample of deficient billing entries:

16

"R&R of Answer ECF 9"; "study of complaints"; "R&R of order"; "Writing Part II (bad search)"; "writing Reply"; "re-writing lumping together"; "R&R and response to emails"; "re-reading #28"; and "Study of order." *Id.* at 1–9. The Center's attorney's barebones descriptions do not provide the Court enough information to determine with a "high degree of certainty" that the reported hours are reasonable. *Role Models Am.*, 353 F.3d at 970. Rather, to the contrary, the deficient entries leave the Court with a high degree of *uncertainty* respecting the reasonableness of the hours expended.

Furthermore, numerous entries appear to be "review of secretarial work" for which the Center's counsel is not entitled to fees. *See Lans v. Dell Computer Corp.*, No. 97-cv-2526, 2005 WL 8169245, at *4 (D.D.C. Sept. 30, 2005) (excluding from fees time entries spent on "purely administrative" tasks); *cf. Role Models Am.*, 353 F.3d at 973 ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them." (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10)).

When faced with inadequate timekeeping records, courts in this district have discounted lump percentages from attorney's fees awards. *See, e.g., Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 825 F. Supp. 2d 226, 230–31 (D.D.C. 2011) (reducing plaintiffs' award by 37.5% for failing to maintain sufficiently detailed contemporaneous records); *Boehner v. McDermott*, 541 F. Supp. 2d 310, 324–26 (D.D.C. 2008) (reducing plaintiff's award by 25% to account for insufficiently documented fees-on-fees). The lack of detail in the Center's billing records here is particularly egregious in comparison to other fee cases in this district. For instance, neither *Citizens for Responsibility & Ethics in Washington* nor *Boehner* had timekeeping deficiencies as pervasive as the timekeeping deficiencies in the Center's attorney's

fee hours log, nor did the plaintiffs in those cases claim as many hours that were logged with deficient entries.

In comparable cases involving the Center's work on unsuccessful motions, with non-contemporaneous timekeeping, and nondescript records, judges in this district reduced the Center's attorney's fees awards by 40% and 50%. *See Louise Trauma Ctr. LLC v. United States Dep't of Homeland Sec.*, 20-cv-01128, 2023 WL 3478479, at *6 (D.D.C. May 16, 2023) (reducing the Center's fee award by 40%); *Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.*, No. 21-cv-2371, 2024 WL 3251225, at *9 (D.D.C. July 1, 2024) (reducing the Center's fee award by 50% in part because "many of counsel's time entries were not sufficiently detailed to allow the Court to determine with a 'high degree of certainty' that the hours in th[e] case were reasonably and actually expended"); *see also Nat'l Sec. Couns. v. Cent. Intel. Agency*, 189 F. Supp. 3d 73, 83 (D.D.C. 2016) (reducing a plaintiff's fee award by "40%" in part because the plaintiff's fee "chart was prepared post hoc, lack[ed] sufficient detail, and include[d] duplicative work"). The Court concludes that reducing the lodestar award amount by 40% is appropriate here. Accordingly, the Center is entitled to $49,465.61 in fees on its successful claims.

### c. "Fees-on-Fees"

Finally, the Court assesses the reasonableness of the Center's fees-on-fees request. It "is settled in this circuit" that "[h]ours reasonably devoted to a request for fees are compensable." *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985). "However, 'fees on fees' must be reasonable, and not excessive." *Gatore v. DHS*, 286 F. Supp. 3d 25, 49 (D.D.C. 2017) (citation omitted). "Courts, therefore, 'have an obligation to scrutinize the hours spent preparing the fee petitions to [e]nsure that the total is reasonable and that it does not represent a windfall for the attorneys.'" *Boehner*, 541 F. Supp. 2d at 325 (citation omitted).

The Center's attorney seeks $35,508.00 for forty-four hours spent preparing the fee motion. *See* Pl.'s Fee Reply at 14. Although the Department does not specifically oppose the hours spent on the motion, the Court finds that the Center's fees-on-fees request is unreasonable. *See Boehner*, 541 F. Supp. 2d at 325. This is so because the Center's fee hours log for its fees-on-fees request is lacking in sufficient detail in the same way as its fee hours log for the underlying litigation. *See* Pl.'s Fee Reply, Ex. C. While that alone justifies reducing the Center's fees-on-fees award, the Court observes that the Center's fees-on-fees request is also equivalent to 36% of the claimed total cost of this litigation—which is disproportionate and excessive. Judges in this district have concluded that fees-on-fees equaling even "30% of the claimed total litigation costs" would be excessive. *See Urban Air Initiative, Inc. v. Env't Prot. Agency*, 442 F. Supp. 3d 301, 327 (D.D.C. 2020). Awarding the Center its fees-on-fees request here "would be an 'unsupportable windfall.'" *Louise Trauma Ctr. LLC.*, 2023 WL 3478479, at *6 (D.D.C. May 16, 2023) (citation omitted). The Court will thus award $10,000.00 in fees-on-fees. *Cf. Urban Air Initiative*, 442 F. Supp. 3d at 326 (awarding $10,000 of requested fees-on-fees where the initial request was $35,574.10).

### 3. Costs

The Department does not oppose the Center's request for $402.00 in costs. *See generally* Def.'s Fee Opp'n. Accordingly, the Court will grant the Center $402.00 in costs.

\* \* \*

The following chart summarizes the Court's adjustments to the Center's request for attorney's fees and costs:

| Time Period | The Center's Hours | The Center's adjustment (less 20%) | Court's adjustment for unsuccessful work (less 12.3 total hours) | Court's adjustment for Lack of Billing Judgement (less 40%) | Fitzpatrick Matrix Rate | Total |
|---|---|---|---|---|---|---|
| 2020 | 10.8 | 8.64 | 6.04 | 3.62 | $731 | $2,646.22 |
| 2021 | 77.5 | 62 | 52.3 | 31.38 | $736 | $23,095.68 |
| 2022 | 55.9 | 44.72 | -- | 26.83 | $760 | $20,390.80 |
| 2023 | 8.6 | 6.88 | -- | 4.13 | $807 | $3,332.91 |
| Fees-on-fees | -- | -- | -- | -- | -- | $10,000.00 |
| Costs | -- | -- | -- | -- | -- | $402.00 |
| Total | -- | -- | -- | -- | -- | $59,867.61 |

## V. CONCLUSION

For the foregoing reasons, the Center's Motion for Attorney's Fees is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 18, 2024                                         RUDOLPH CONTRERAS
                                                                   United States District Judge